**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| ROY DUNCAN, | ) | CASE NO. 1:11CV695 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| ED SHELDON, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Roy Duncan ("Duncan"), challenges the constitutionality of his conviction in the case of *State v. Duncan*, Richland County Court of Common Pleas Case No. 2006- CR-0491.  Duncan filed his *pro se* Petition for a Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on April 7, 2011.  On April 7 and April 28, 2011, Duncan filed motions to stay the proceeding until exhaustion of several pending state court pleadings.  (Doc. Nos. 3, 4.)  On May 6, 2011, the Court dismissed Duncan's Petition without prejudice, pending exhaustion.  (Doc. No. 5.)

Duncan filed a Motion to Reopen on September 17, 2012 (Doc. No. 7), which was granted the next day.  (Doc. No. 8.)   On December 27, 2012, Warden Ed Sheldon ("Respondent") filed his Return of Writ.  (Doc. No. 12.)  Duncan filed a Traverse on April 3, 2013.  (Doc. No. 22.)  For reasons set forth in detail below, it is recommended that Duncan's petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also Moore v. Mitchell*, 708 F.3d 760, 775 (6th Cir. 2013).  The state appellate court summarized the facts underlying Duncan's conviction as follows:

> On May 19, 2006, at approximately 1:30 a.m., Appellant and Kathy Ward, an acquaintance, travelled in a Ford Taurus while leaving the parking lot of Hills Bar in Richland, County. The vehicle's headlights were not turned on when the car exited the bar parking lot.
>
> Trooper James Burkhart noticed the vehicle travelling without headlights, and also witnessed the vehicle cross the center line. As a result, Trooper Burkhart pulled up behind the vehicle, activating his cruiser lights. The vehicle failed to stop, and Trooper Burkhart then activated the cruiser siren. The Taurus increased in speed, exiting onto Main Street and striking a guard rail. Trooper Burkhart pursued the vehicle down Main Street, reaching speeds of eighty to ninety miles per hour through the downtown area. The vehicle passed a tractor trailer on the left and ran a red light.
>
> At one point, Trooper Burkhart lost sight of the vehicle for a short time. He then came upon a cloud of smoke and dirt, with chunks of concrete and other debris on the road. He observed the Taurus crashed into a Mansfield City Police cruiser driven by Officer Richard Miller.
>
> As Trooper Burkhart approached the vehicle, he saw Appellant unconscious in the driver's seat with his head lying on the window sill of the driver's side door. Kathy Ward was on her knees on the passenger side floorboard with her head lying on the passenger seat. She appeared to be deceased. Officer Miller was unconscious and moaning in pain.
>
> At the scene of the accident, Appellant became very combative with emergency medical personnel. Once extracted from the vehicle, Appellant resisted the cervical collar and straps were used to immobilize him on the backboard. Further, Appellant was disruptive in the emergency room, cursing and spitting at healthcare providers, while attempting to remove the restraints and collar. Blood tests later revealed Appellant's blood alcohol level to be .153 at the time.
>
> The Richland County Grand Jury indicted Appellant on two counts of failure to

-2-

comply with the order or signal of a police officer; two counts of driving while under the influence of alcohol, each with a specification of a previous conviction of five equivalent offenses within twenty years; one count of aggravated vehicular assault; and one count of vehicular assault.

Following a jury trial, Appellant was convicted of all counts and specifications. The trial court sentenced Appellant to eighteen years incarceration.

*State v. Duncan*, Case No. 2009CA028, 2009 WL 3440025 at * 1 (Ohio Ct. App. 5th Dist., October 21, 2009).  *See also* Doc. No. 12-1.

## II.  Procedural History

### A.  Conviction

On August 10, 2006, a Richland County Grand Jury charged Duncan with the following: (1) two counts of Failure to Comply with the Order or Signal of a Police Officer in violation of Ohio Rev. Code §§ 2921.331(B)(5)(a)(i) and 2921.331(B)(5)(a)(ii), respectively (Counts One and Two); (2) Operating a Vehicle While Under the Influence of Alcohol in violation of Ohio Rev. Code § 4511.19(A)(1)(a) (Count Three); (3) Operating a Vehicle With a Prohibited Concentration of Alcohol in his System in violation of Ohio Rev. Code § 4511.19(A)(1)(b) (Count Four); (4) Aggravated Vehicular Assault in violation of Ohio Rev. Code § 2903.08(A)(1)(a) (Count Five); and, (5) Vehicular Assault in violation of Ohio Rev. Code § 2903.08(A)(2)(b) (Count Six).  (Doc. No. 12-2.)  Counts Three and Four each included specifications pursuant to Ohio Rev. Code § 2941.143 that, within the preceding twenty years, Duncan had been convicted of or pled guilty to five or more equivalent offenses.  (Doc. No. 12-2 at 2.)  Duncan entered a plea of not guilty on August 31, 2006.  (Doc. No. 12-3 at 23.)

On August 31, 2007, a jury found Duncan guilty of all Counts.  (Doc. No. 12-3 at 7.)  On September 5, 2007, the trial court sentenced Duncan as follows: (1) five years on Count One; (2)

-3-

four years on Count Two; (3) six months on Count Three; (4) eight years on Count Five; and, (5)

five years on Count Six.[1]  (Doc. No. 12-4 at 3.)  The trial court specified that the sentences on

Counts One, Two, Five, and Six were to be served consecutively, while the sentence on Count

Three was to be served concurrently, resulting in an aggregate sentence of 22 years. (Doc. No. 12-

4 at 3.)  In addition, Duncan was sentenced to three years of mandatory post-release control

("PRC"); fined $500; and, ordered to pay restitution "for medical expenses to Kathy Ward,

Richard Miller, or providers."  (Doc. No. 12-4 at 3.)  Finally, the sentencing entry indicated that

Duncan's drivers license was suspended without specifying for how long.  (Doc. No. 12-4 at 3.)

Shortly thereafter, on September 16, 2007, the trial court issued an Amended Sentencing

Entry (hereinafter "First Amended Sentencing Entry").  (Doc. No. 12-5.) Therein, the court

indicated that Count Two was merged into Count One (five years) for sentencing purposes, and

that Count Four was merged into Count Three (six months).  (Doc. No. 12-5 at 2.)  The sentences

for Counts Five and Six remained the same (i.e. eight years and five years, respectively).  The

sentences on Counts One, Five and Six were ordered to be served consecutively and the sentence

on Count Three was ordered to be served concurrently, resulting in an aggregate sentence of 18

years.  (Doc. No. 12-5 at 2.)  Duncan was once again sentenced to three years of mandatory PRC;

fined $500; and, ordered to pay restitution.  Further, the First Amended Sentencing Entry

specified that Duncan's drivers license was suspended for life.  (Doc. No. 12-5 at 3.)

### B.   Direct Appeal from Original Sentencing Entry

On September 27, 2007, Duncan, through counsel, filed a Notice of Appeal with the Court

---

[1]  The sentencing entry does not reflect a sentence with respect to Count Four.  Further, it
does not appear that Duncan was convicted of the specifications to Counts Three and
Four.  (Doc. No. 12-4.)

-4-

of Appeals for the Fifth Appellate District ("state appellate court"). This appeal challenged his

conviction and original sentencing entry dated September 5, 2007; i.e. his original (as opposed to

amended) sentencing entry. *See* Doc. No. 12-3 at 5; *State v. Duncan*, Case No. 2007CA083, 2009

WL 321275 (Ohio App. 5th Dist. Feb. 9, 2009). In this appeal, Duncan raised the following four

assignments of error:

      I.      APPELLANT WAS DENIED A FAIR TRIAL BECAUSE THE STATE OF
                  OHIO INTENTIONALLY INTRODUCED PREJUDICIAL EVIDENCE
                  THROUGH THE TESTIMONY OF THE EMERGENCY ROOM NURSE,
                  ELAINE SEWART.

      II.     THE TRIAL COURT ABUSED ITS DISCRETION IN ADMITTING
                  DEFENDANT'S DRIVING HISTORY AS TO MULTIPLE PRIOR
                  SUSPENSIONS RATHER THAN ACCEPTING HIS STIPULATION TO
                  THE ACTIVE SUSPENSION AT THE TIME OF THE ACCIDENT.

      III.    THE TRIAL COURT ERRORED [SIC] TO THE PREJUDICE OF THE
                  DEFENDANT/APPELLANT IN DENYING HIS MOTION FOR
                  ACQUITTAL MADE AT THE CLOSE OF THE STATE'S CASE
                  PURSUANT TO RULE 29.

      IV.    APPELLANT'S CONVICTION WAS AGAINST THE MANIFEST
                  WEIGHT OF THE EVIDENCE.

*State v. Duncan*, 2009 WL 321275 at * 1. *See also* Doc. No. 12-7 at 2.

      On February 9, 2009, the state appellate court dismissed Duncan's appeal, finding it did

not have jurisdiction because the September 5, 2007 sentencing entry did not specify the manner

in which Duncan was convicted and, therefore, did not constitute a "final order" pursuant to

Ohio Crim. R. 32 and *State v. Baker*, 119 Ohio St.3d 197 (2008). *See State v. Duncan*, 2009 WL

321275 at * 2.

      Duncan filed a timely *pro se* appeal to the Ohio Supreme Court on March 24, 2009.

(Doc. No. 12-11.) In his jurisdictional memorandum, Duncan raised the following sole

-5-

proposition of law:

> I.    RELATOR WOULD NOT BE RELIABLE FOR AN INVALID JUDGMENT OF CONVICTION PURSUANT TO O.CRIM.R. 32(C), THAT THE TRIAL COURT ISSUED, THEN APPELLATE COURT DISMISSED, AND ASSESSED THE COST OF THE APPEAL TO APPELLANT.

(Doc. No. 12-12 at 2.)  On July 1, 2009, the case was dismissed as not involving any substantial constitutional question.  (Doc. No. 12-13.)  There was no further appeal from this judgment.

### C.    Proceedings Relating to First and Second Amended Sentencing Entries

Meanwhile, on August 25, 2008, Duncan filed in the trial court a *pro se* motion for correction of the First Amended Sentencing Entry and appointment of new appellate counsel. (Doc. No. 12-3 at 4.)  The trial court denied the motion on December 11, 2008.  (Doc. No. 12-14.) Duncan thereafter filed a motion for reconsideration, which was denied on January 7, 2009. (Doc. No. 12-3 at 4.)

Duncan filed a timely *pro se* notice of appeal (Doc. No. 12-3 at 4), raising the following two assignments of error:

> I.    THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO DEFENDANT/APPELLANT'S APPEAL BY DOCKETING, AND NOT PROPERLY JOURNALIZING ON TO THE RECORD A JUDGMENT OF CONVICTION THAT DOES NOT CONSTITUTE A FINAL APPEALABLE ORDER. VIOLATING APPELLANTS FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS DUE PROCESS RIGHTS OF THE UNITED STATES CONSTITUTION ALSO ARTICLE IV, SECTION 3(B)(2); ARTICLE I, SECTION X, OF THE OHIO CONSTITUTION, AND O.R.C. 2505.02; O.CRIM.R. 32(C); O.CRIM.R.52(B); SUP.R.7; ALSO APPELLANT NOT BEING ABLE TO PROPERLY APPEAL HIS CONVICTIONS OF O.R.C. 2921.331(B)(5)(A)(I) & (II) SUBSECTION; O.R.C. 4511.19(A)(1)(A) & (B) SUBSECTION; O.R.C. 2903.08(A)(1)(A) & 2(B) SUBSECTION; O.R.C. 4507. IN CRIMINAL CASE NUMBER 2006-CR-0491 D.

> II.    APPELLANT COUNSEL COMMITTED PREJUDICIAL PLAIN ERROR TO

> DEFENDANT/APPELLANT'S APPEAL BY NOT RAISING IN HIS BRIEF
> REQUESTED ASSIGNMENTS OF ERROR, ONE ERROR BEING
> APPELLANT'S JUDGMENT OF CONVICTION NOT CONSTITUTING A
> FINAL APPEALABLE ORDER PURSUANT TO O.CRIM.R.32(C).
> VIOLATING APPELLANT'S FIFTH, SIXTH, AND FOURTEENTH
> AMENDMENT DUE PROCESS RIGHTS OF THE UNITED STATES
> CONSTITUTION, AND ARTICLE IV, SECTION 3(B)(2); ARTICLE I,
> SECTION X OF THE OHIO CONSTITUTION; O.CRIM.R.32(C);
> O.CRIM.R.52(B); O.R.C. 2505.02, AND ALSO VIOLATING APPELLANT'S
> RIGHT TO SET FORTH A PROPER APPEAL CONTESTING THE
> CONVICTIONS IN VIOLATION OF O.R.C. 2921.331(B)(5)(A)(I) & (II)
> SUBSECTIONS; O.R.C. 4511.19(A)(1)(A) & (B) SUBSECTION; O.R.C.
> 2903.08 (A)(1)(A) & (2)(B) SUBECTION; IN CRIMINAL CASE NUMBER
> 2006-CR-0491 D.

(Doc. No. 12-17 at 3-4.)

On February 17, 2009 (while Duncan's appeal was pending), the state trial court issued a

Second Amended Sentencing Entry, presumably in response to the state appellate court's

February 9, 2009 decision finding the original Sentencing Entry failed to comply with *State v.*

*Baker*, 119 Ohio St.3d 197 (2008). The Second Amended Sentencing Entry was identical to

First Amended Sentencing Entry in all respects, except that it specified that Duncan was

convicted by a jury. (Doc. No. 12-21.)

Duncan thereafter filed a *pro se* motion to voluntarily dismiss his appeal from the trial

court's denial of his motion to correct the First Amended Sentencing Entry. (Doc. No. 12-19.)

Duncan's motion was granted on March 18, 2009, and his appeal dismissed. (Doc. No. 12-20.)

There was no further appeal from this judgment.

On March 3, 2009, Duncan filed a timely *pro se* notice of appeal from the Second

Amended Sentencing Entry.[2] (Doc. No. 12-23.) He raised the following ten assignments of

---

[2] It appears Duncan's counsel filed a separate notice of appeal on April 3, 2009, as well
as a motion for delayed appeal. (Doc. No. 12-24.) On May 20, 2009, the state appellate

error:

I.    THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO
      DEFENDANT/APPELLANT DEFENSE BY NOT ACCEPTING THE
      DEFENDANTS MOTION FOR ACQUITTAL O.CRIM.R.29(A) AT THE
      END OF THE STATES CASE ON ALL OF THE JURY'S CONVICTIONS
      COUNTS 1-6 DUE TO THE 'INSUFFICIENT EVIDENCE' OF THE
      STATE TO PROVE THE MAIN MOST ESSENTIAL ELEMENT OF
      'IDENTITY OF THE OFFENDER'. THIS VIOLATED APPELLANTS
      FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS DUE PROCESS
      RIGHTS OF THE UNITED STATES CONSTITUTION, & ARTICLE I,
      SECTION 10 & 16 OF THE OHIO CONSTITUTION BY
      O.CRIM.R.52(B); O.R.C. 2921.331(B)(5)(a)(i) & 2921.331(B)(5)(a)(ii);
      O.R.C. 4511.19(A)(1)(a) & 4511.19(A)(1)(b); O . R.C. 2903.08(A)(1)(a) &
      O.R.C. 2903.08(A)(2)(b); O.R.C.4507.

II.   THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO
      DEFENDANT/APPELLANT'S DEFENSE BY ALLOWING A
      CONVICTION AND SENTENCING DEFENDANT ON AN 'IMPLIED
      ACQUITTAL' IN COUNT ONE VERDICT, WHEREAS THE
      INDICTMENT DOES NOT CHARGE THE CONVICTION ALLEGED.
      VIOLATING APPELLANT'S FIFTH, SIXTH, AND FOURTEENTH
      AMENDMENTS DUE PROCESS RIGHTS OF THE UNITED STATES
      CONSTITUTION, AND ARTICLE I, SECTION 10 & 16 OF THE OHIO
      CONSTITUTION BY O.CRIM.R.52(B); O.CRIM.R .29(A); O.R.C.
      2921.331(B)(5)(a)(i) AND O.R.C. 2921.331(B)(5)(A)(ii).

III.  THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO
      DEFENDANT/APPELLANTS DEFENSE BY ACCEPTING JURY'S
      VERDICT COUNT SIX 'AGGRAVATED VEHICULAR ASSAULT' IS
      NOT CHARGED BY INDICTMENT COUNT SIX, IN ACCORDANCE
      WITH THE SUBSECTIONS USED IT SHOULD BE 'VEHICULAR
      ASSAULT' THIS VIOLATED APPELLANTS FIFTH, SIXTH, AND
      FOURTEENTH AMENDMENTS DUE PROCESS RIGHTS OF THE
      UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 &
      16 OF THE OHIO CONSTITUTION BY O.CRIM.R.52(B);
      O.CRIM.R.29(A); O.R.C. 2903.08(A)(1)(a), 2903.08(A)(2)(b) & O.R.C.
      2903.08(C)(1).

_____

court determined that "appellant Duncan already initiated a timely notice of appeal in
[Case No.] 09 CA 28 making the instant motion duplicitous and moot." (Doc. No. 12-24
at 1.)

IV.     THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO
        DEFENDANT/APPELLANTS DEFENSE BY ACCEPTING THE JURY'S
        SEPARATE CONVICTION, THEN SEPARATELY SENTENCING ON
        COUNT FIVE 'AGGRAVATED VEHICULAR ASSAULT' WHEN THE
        JURY HAD ALREADY CONVICTED, AND THE COURT HAD
        ALREADY SENTENCED DEFENDANT ON THE 'LESSER INCLUDED
        OFFENSE' IN COUNT THREE 'DRIVING UNDER THE INFLUENCE.'
        THIS VIOLATED APPELLANTS FIFTH, SIXTH, FOURTEENTH
        AMENDMENTS DUE PROCESS RIGHT OF THE UNITED STATES
        CONSTITUTION AND ARTICLE I, SECTION 10 & 16 OF THE OHIO
        CONSTITUTION BY O.CRIM.R.52(B); O.CRIM.R .29(A); O.R.C.
        2903.08(A)(1)(a); O.R.C. 4511.19(A) & (1)(a); O.R.C.45 .07.

V.      THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO
        DEFENDANT/APPELLANTS DEFENSE BY ACCEPTING AN
        ISOLATED, INDEPENDENT, DOUBLE JEOPARDY BARRED FROM
        REVIEW, FINDING OF DRIVING SUSPENSION IN VERDICT COUNT
        SEVEN FOR ELEVATION PURPOSES, TO ENHANCE TWO OTHER
        SEPARATE ISOLATED, INDEPENDENT, DOUBLE JEOPARDY
        BARRED FROM REVIEW VERDICT COUNTS FIVE, AND SIX,
        APPELLANT IS NOT CHARGED WITH AN INDICTMENT COUNT
        SEVEN. THIS VIOLATED APPELLANTS FIFTH, SIXTH, AND
        FOURTEENTH AMENDMENTS DUE PROCESS RIGHT OF THE
        UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 &
        16 OF THE OHIO CONSTITUTION BY O.CRIM.R.52(B);
        O.CRIM.R.29(A); O.R.C. 4507; O.R.C. 2903.08(A)(1)(a);
        2903.08(A)(2)(b).

VI.     THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO
        DEFENDANT/APPELLANTS DEFENSE BY SEPARATELY
        SENTENCING APPELLANT TO CONSECUTIVE TERMS ON THE
        SAME SERIOUS PHYSICAL HARM AGAINST THE SAME PERSON,
        ARISING FROM THE SAME COURSE OF CONDUCT. THIS
        VIOLATED APPELLANTS FIFTH, SIXTH, AND FOURTEENTH
        AMENDMENTS DUE PROCESS RIGHTS OF THE UNITED STATES
        CONSTITUTION AND ARTICLE I, SECTION 10 & 16 OF THE OHIO
        CONSTITUTION BY O.CRIM.R.52(B); O.CRIM.R .29(A); O.R.C.
        2921.331(B)(5)(a)(i); O.R.C. 2903.08(A)(1)(a).

VII.    THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO
        DEFENDANT/APPELLANTS DEFENSE BY ACCEPTING JURY'S
        CONVICTIONS COUNTS ONE THROUGH SIX. THE VERDICTS
        SHOW THAT THE JURY NEVER FOUND OR DETERMINED NONE

OF THE ESSENTIAL ELEMENTS, OR ALL OF THE WRONG ESSENTIAL ELEMENTS NEEDED FOR THE CONVICTIONS. THIS VIOLATED APPELLANTS FIFTH, SIX, AND FOURTEENTH AMENDMENTS DUE PROCESS RIGHTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 & 16 OF THE OHIO CONSTITUTION BY O.CRIM.R.52(B): O.CRIM.R .29(A); O.R.C. 2921.331(B)(5)(a)(i), 2921.331(B)(5)(a)(ii); O.R.C. 4511.19(A)(1)(a), 4511.19(A)(1)(b); 2903.08(A)(1)(a), 2903.08(A)(2)(b); O.R.C. 4507.

VIII.   THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO DEFENDANT/APPELLANTS DEFENSE BY HOLDING TWO AMENDED SENTENCING HEARINGS WITHOUT APPELLANTS PRESENCE, BOTH OF WHICH AN ADDITIONAL PUNISHMENT WAS ADDED, WITHOUT AFFORDING APPELLANT AN OPPORTUNITY TO MAKE PRESERVATION OBJECTIONS. THIS VIOLATED APPELLANT [SIC] FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS DUE PROCESS RIGHTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 & 16 OF THE OHIO CONSTITUTION BY O.CRIM.R.52(B); O.CRIM.R.29(A); O.CRIM.R.32(C); O.CRIM.R.32(A); O.CRIM.R.43(A)(1) O.R.C. 2921.331(B)(5)(a)(i) & 2921 .331(B)(5)(a)(ii); O.R.C. 4511.19(A)(1)(a) & 4511.19(A)(1)(b); O.R.C. 2903.08(A)(1)(a) & 2903.08(A)(2)(b); O.R.C. 4507.; O.R.C. 2941.1413.

VIX.    THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO DEFENDANT/APPELLANTS DEFENSE BY EXPOSING TO THE JURY DEFENDANTS HOLE [SIC] DRIVERS SUSPENSION RECORD RATHER THAN ACCEPT DEFENDANTS STIPULATION TO THE ACTIVE SUSPENSION NEEDED TO ELEVATE. THE VIOLATED APPELLANTS FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS DUE PROCESS RIGHTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 & 16 OF THE OHIO CONSTITUTION BY O.CRIM.R.52(B); O.R.C. 4507.; O.R.C. 2903.08(A)(1)(a), & 2903.08(A)(2)(b); O. EVI D. R.401-0403(A)(B).

X.      THE TRIAL COURT COMMITTED PREJUDICIAL PLAIN ERROR TO DEFENDANT/APPELLANTS DEFENSE BY ACCEPTING JURY'S VERDICT CONVICTION COUNT SIX, WHEREAS THE MAIN MOST ESSENTIAL ELEMENT OF SERIOUS PHYSICAL HARM WAS NEVER PROVEN BY REQUIREMENTS OF THE STATUE [SIC]. THIS VIOLATED APPELLANTS FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS DUE PROCESS RIGHT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 & 16 OF THE OHIO

CONSTITUTION BY O.CRIM.R.52(B); O.CRIM.R.29(A); O.R.C.
2903.08(A)(2)(B); O.R.C. 2901 .01(E)(2); O.R.C. 4507.

*State v. Duncan*, Case No. 2009CA028, 2009 WL 3440025 at * 1-3.  *See also* Doc. No. 25 at 5-6.

On October 21, 2009, the state appellate court affirmed Duncan's conviction, but reversed

the Second Amended Sentencing Entry (after sustaining his Fourth and Eighth Assignments of

Error) and remanded for resentencing.  *See State v. Duncan*, Case No. 2009CA028, 2009 WL

3440025 at * 7, 10.  Duncan then filed a "Motion to File Instanter" a "Motion for Clarification

and Fact Finding and Conclusion."[3]  (Doc. No. 12-29.)   Duncan was given fourteen days to file a

motion for reconsideration of the October 21, 2009 decision.  (Doc. No. 30.)  Duncan thereafter

filed a Motion for Reconsideration (Doc. No. 12-31); Motion to Certify Conflict (Doc. No. 12-

32); and, Motion for Clarification (Doc. No. 12-33.)  He later filed another Motion for

Reconsideration.  (Doc. No. 12-34.)  In March 2010, Duncan's motions were denied.  (Doc. Nos.

12- 35, 12-36.)

In the meantime, Duncan, proceeding *pro se*, timely appealed the state appellate court's

October 21, 2009 decision to the Ohio Supreme Court.[4]  (Doc. No. 12- 46.)  In his jurisdictional

memorandum, Duncan raised the same ten assignments of error as in his direct appeal to the state

---

[3] While styled a "Motion to file Instanter," Duncan's motion did not attach an
accompanying "Motion for Clarification and Fact Finding and Conclusion."  (Doc. Nos.
29, 30.)

[4] Duncan also filed separate appeals from the state appellate court judgments denying his
motions for reconsideration, motion for clarification, and, motion to certify a conflict.
(Doc. No. 12-38, 12-43.)  It appears Duncan later filed an application to dismiss his
appeal from the denial of his motions for reconsideration and clarification, which
application was granted on April 27, 2010. (Doc. No. 12-41.)  With regard to Duncan's
appeal from the denial of his motion to certify a conflict, the Ohio Supreme Court
dismissed this appeal on July 21, 2010.  (Doc. No. 12-45.)  Duncan did not seek any
further appellate review with respect to the denial of these motions.

appellate court.  (Doc. No. 12- 48.)  On May 26, 2010, the appeal was dismissed as not involving

any substantial constitutional question. (Doc. No. 12-51.)  There was no further appeal from this

judgment.

**D.    Proceedings relating to Third Amended Sentencing Entry**

On December 8, 2009, the trial court issued a third sentencing entry (hereinafter "Third

Amended Sentencing Entry").  (Doc. No. 12-52.)  The court imposed a sentence of five years on

Count One, after merging it into Count Two.  Counts Three and Four were merged into Count

Five, resulting in a sentence of eight years.  A sentence of five years was imposed for Count Six.

The court noted that the sentences on Counts One, Five and Six were to be served consecutively,

for an aggregate sentence of 18 years.  (Doc. No. 12-52 at 2.)  Duncan was again sentenced to

three years of mandatory PRC; fined $500; and, ordered to pay restitution.  The Third Amended

Sentencing Entry also specified that Duncan's drivers license was suspended for life.  (Doc. No.

12-52 at 2.)

Duncan appealed *pro se*, raising the following assignments of error:[5]

I.    THE JUDGMENT ENTRY DOES NOT FINALIZE EVERY CHARGED COUNT
OF THE INDICTMENT, WHEREBY VIOLATING THE APPELLANT'S DUE
PROCESS RIGHT TO APPEAL IN VIOLATION OF O.CRIM.R.32(CC); O.R.C.
2505.02; ARTICLE IV, SECTION 3(B)(2) OF THE OHIO CONSTITUTION, AND
APPELLANT'S FIFTH SIXTH AND FOURTEENTH AMENDMENTS DUE
PROCESS RIGHT OF THE UNITED STATES CONSTITUTION.

II.    THE TRIAL COURT COMMITTED PLAIN ERROR WHEN MERGING COUNT

_____

[5]  Duncan filed a *pro se* appellant brief on May 19, 2010, which raised four assignments
of error.  (Doc. No. 12-55.)  Several months later, with leave of court, Duncan filed an
amended *pro se* appellant's brief, which added to the language of his first, third and
fourth assignments of error and asserted three additional assignments of error.  (Doc. No.
12-56.)  The assignments of error set forth are taken from Duncan's amended *pro
se* appellant brief. (Doc. No. 12-56.)

-12-

III THE LESSER INCLUDED OFFENSE THAT WAS FINALIZED FIRST INTO COUNT V THE GREATER OFFENSE OF AGGRAVATED VEHICULAR ASSAULT.

III. THE TRIAL COURT COMMITTED PLAIN ERROR BY IMPOSING A 3RD DEGREE FELONY SENTENCE IN COUNT 1 WHEREAS THE VERDICT FORM ONLY QUALIFIES A 1ST DEGREE MISDEMEANOR SENTENCE, WHEREBY VIOLATING APPELLANT'S FIFTH SIXTH AND FOURTEENTH AMENDMENTS DUE PROCESS RIGHTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 & 16 OF THE OHIO CONSTITUTION.

IV. THE TRIAL COURT COMMITTED PLAIN SENTENCING ERROR ON COUNTS V & VI, WHEN IF SPECIFICALLY CONSIDERING, ONLY, VERDICT COUNTS V& VI CONSTITUTES THE IMPOSITION OF THE LEAST DEGREE. WHEREBY VIOLATING APPELLANT'S FIFTH SIXTH AND FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION AND ARTICLE I, SECTION 10 & 16 OF THE OHIO CONSTITUTION.

V. THE TRIAL COURT COMMITTED PLAIN ERROR BY ADMITTING INTO EVIDENCE, AND EXPOSING TO THE JURY THE APPELLANT'S DRIVING UNDER SUSPENSION RECORD RATHER THAN ACCEPT A STIPULATION ONTO THE RECORD AN ADMISSION OF THE ACTIVE SUSPENSION NEEDED FOR ELEVATION PURPOSES.  WHEREBY VIOLATING THE APPELLANT'S PURPOSES.  WHEREBY VIOLATING THE APPELLANT'S FIFTH SIXTH AND FOURTEENTH AMENDMENT DUE PROCESS RIGHT OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 & 16 OF THE OHIO CONSTITUTION, ALSO OHIO EVIDENCE RULE 401-4043 (A)(B).

VI. THE TRIAL COURT COMMITTED PLAIN SENTENCING ERROR WHEN SENTENCING THE APPELLANT IN A MULTIPLICITOUS MANNER, BY IMPOSING CONSECUTIVE TERMS IN COUNTS 5 & 6 FOR THE SAME SINGLE STATUTORY OFFENSE OF DRIVING UNDER SUSPENSION. WHEREBY VIOLATING APPELLANT'S FIFTH SIXTH AND FOURTEENTH AMENDMENTS DUE PROCESS RIGHTS OF THE UNITED STATES CONSTITUTION, AND ARTICLE I, SECTION 10 & 16 OF THE OHIO CONSTITUTION.

VII. THE TRIAL COURT COMMITTED PLAIN ERROR TO THE DEFENDANT'S DEFENSE BY NOT CUREING [SIC] THE INDICTMENT OF PREJUDICIAL PRIOR BAD ACTS OF OVI'S & OVI SPECIFICATIONS BEFORE TRIAL, WHICH AS A RESULT OF EXPOSED TO THE JURY THE PRIOR BAD ACTS.

-13-

WHEREBY VIOLATING THE APPELLANT'S FIFTH SIXTH AND
FOURTEENTH AMENDMENTS OF THE UNITED STATES CONSTITUTION,
AND ARTICLE I, SECTION 10 & 16 OF THE OHIO CONSTITUTION, ALSO
EVIDENCE RULE 404(B).

(Doc. No. 12-56 at 5.)

On February 23, 2011, Duncan filed a motion to voluntarily dismiss his appeal based on

his belief that he "does not have a Judgment of Conviction that constitutes a final appealable

order pursuant to Ohio Rev. Code 2505.02." (Doc. No. 12-58.)  Duncan's motion was granted on

March 4, 2011.  (Doc. No. 12-59.)

Over a year later, on May 11, 2012, Duncan filed a motion to reinstate his appeal.  (Doc.

No. 12-60.)  The motion was denied on May 16, 2012.  (Doc. No. 12-61.)

**E.     Further Efforts to Obtain Resentencing**

Meanwhile, while his direct appeal from the Third Amended Sentencing Entry was

pending, Duncan filed a *pro se* motion in the trial court on March 9, 2010 for "a final order and/or

revised sentencing/judgment entry." (Doc. No. 12-62.)  The trial court denied the motion, finding

it lacked jurisdiction in light of Duncan's pending appeal.  (Doc. No. 12-65.)

A year later, on March 10, 2011, Duncan filed a *pro se* "Motion for Resentencing,"

claiming his judgment of conviction did not constitute a "final and appealable order" because it

failed to either (1) specify the exact amount of restitution; or, (2) contain a disposition of the

Operating a Vehicle While Intoxicated ("OVI") specifications set forth in Counts Three and Four

of the Indictment.  (Doc. No. 12-66 at 1-3.)  The trial court denied the motion for resentencing on

October 13, 2011, but found that "the state has offered no evidence at sentencing or since

sentencing that the victims seek payment of any . . . restitution" and, therefore, Duncan "has no

monetary restitution to pay in this case." (Doc. No. 12-69 at 2.)

Duncan did not appeal this judgment but, rather, filed a Petition for Writ of Mandamus in the state appellate court on November 3, 2011, seeking to require the trial court to resentence him. (Doc. No. 18-6.)  The State filed a Motion to Dismiss, which was granted on April 23, 2012. (Doc. No. 18-9.)

Duncan appealed the denial of his Petition for Writ of Mandamus to the Ohio Supreme Court, raising the following two propositions of law:

    I.    THE PRIOR CONVICTIONS AND FELONY OVI SPECIFICATIONS NAMED AND ATTACHED TO COUNTS THREE AND FOUR INDICTMENT HAVE NEVER BEEN STRICKEN, DISMISSED, OR FINALIZED BY CONVICTION OR SENTENCE IN ACCORDANCE WITH THE GRANTING OF A PRE-TRIAL MOTION AGREEING TO DO SO.

    II.    THE JUDGMENT ENTRY AND RESENTENCING HEARING SPECIFICALLY RELATED TO DECEMBER 9, 2009 IS NON-FINAL BECAUSE BOTH FAIL TO IMPOSE AN EXACT CASH AMOUNT OF RESTITUTION AS REQUIRED BY O.R.C. § 2929.18(A)(1).

(Doc. No. 18-12 at 2.)  On August 30, 2012, a *per curiam* decision was issued affirming the judgment of the state appellate court.  (Doc. No. 18-15.)  There was no further appeal from that judgment.

### G.    Federal Habeas Petition

Duncan filed the instant habeas petition in this Court on March 25, 2011 and asserted the following grounds for relief:[6]

---

[6]  With respect to each of Duncan's grounds for relief, the Petition states that "Petitioner is being held in violation of the 5th, 6th, & 14th Amendments Due Process Rights of the United States Constitution." (Doc. No. 1-1 at 1-12.)  Rather than repeating this phrase for each ground for relief, this Opinion will simply set forth Duncan's recitation of the "Supporting Facts" with respect to each ground for relief.

**GROUND ONE**:

**SUPPORTING FACTS**: THE TRIAL COURT ERRED WHEN NOT GRANTING THE PETITIONER'S MOTION FOR ACQUITTAL ON ALL COUNTS, BEING THE STATE INSUFFICIENTLY PROVED GUILT BEYOND A REASONABLE DOUBT, SCIENTIFIC EVIDENCE AND EXPERT TESTIMONY SUPPORT THE PETITIONER'S TRUE INNOCENCE.

**GROUND TWO**:

**SUPPORTING FACTS**: THE TRIAL COURT ERRED WHEN ALLOWING A CONVICTION, AND SENTENCING THE DEFENDANT IN COUNT ONE, WHEREAS THE INDICTMENT DOES NOT CHARGE THE CONVICTION ALLEGED IN THE VERDICT.

**GROUND THREE**:

**SUPPORTING FACTS**: THE TRIAL COURT ERRED WHEN ALLOWING A CONVICTION, AND SENTENCING THE DEFENDANT IN COUNT SIX, WHEREAS THE INDICTMENT DOES NOT CHARGE THE CONVICTION ALLEGED IN THE VERDICT.

**GROUND FOUR**:

**SUPPORTING FACTS**: THE TRIAL COURT ERRED WHEN ALLOWING A CONVICTION IN COUNT FIVE AGGRAVATED VEHICULAR ASSAULT, WHEN THE DEFENDANT HAD ALREADY BEEN CONVICTED OF THE LESSER INCLUDED OFFENSE OF DRIVING UNDER THE INFLUENCE IN CONVICTION COUNT THREE.

**GROUND FIVE:**

**SUPPORTING FACTS**: THE COURT COMMITTED PLAIN ERROR WHEN ALLOWING VERDICT COUNT SEVEN, THAT CONTAINED THE ENHANCEMENT ELEMENT OF DRIVING UNDER SUSPENSION, TO REFLECT AND DETERMINE THE OUTCOME OF INDEPENDENT VERDICTS COUNTS FIVE & SIX, WHEN DETERMINING THE OUTCOME OF ONE VERDICT COUNT ALL OTHER VERDICT COUNTS ARE TO BE IGNORED.

**GROUND SIX:**

**SUPPORTING FACTS**: THE TRIAL COURT COMMITTED PLAIN ERROR WHEN CONSECUTIVELY SENTENCING THE DEFENDANT FOR THE SAME EXACT

SERIOUS PHYSICAL HARM ELEMENT AGAINST THE SAME PERSON,
CHARGED IN BOTH COUNTS ONE AND FIVE.

**GROUND SEVEN:**

**SUPPORTING FACTS**: THE TRIAL COURT COMMITTED PLAIN ERROR WHEN
ACCEPTING CONVICTIONS ON COUNTS ONE THROUGH SIX, WHEN THE JURY
NEVER FOUND THE ELEMENTS OR THE WRONG ESSENTIAL ELEMENTS
REQUIRED FOR CONVICTIONS IN THOSE COUNTS.

**GROUND EIGHT:**

**SUPPORTING FACTS**: THE TRIAL COURT COMMITTED PLAIN ERROR WHEN
NOT FINALIZING AND ADDING THE ADDITIONAL PUNISHMENT OF THE
EXACT AMOUNT OF RESTITUTION AT BOTH SENTENCING HEARINGS.

**GROUND NINE**:

**SUPPORTING FACTS**: THE TRIAL COURT COMMITTED PLAIN ERROR BY
ALLOWING THE STATE TO EXPOSE THE DEFENDANT'S DRIVING HISTORY
TO THE JURY, RATHER THAN ACCEPTING THE DEFENDANT'S ATTEMPTED
STIPULATION ONTO THE RECORD AN ADMISSION OF THE FACT THAT HE
WAS UNDER AN ACTIVE DRIVERS SUSPENSION AT THE TIME OF THE CRIME
ALLEGED.  WHICH WOULD OF SERVED THE SAME PURPOSE AS EXPOSING
THIS PREJUDICIAL INFORMATION TO THE JURY.

**GROUND TEN**:

**SUPPORTING FACTS**: THE TRIAL COURT COMMITTED PLAIN ERROR WHEN
ALLOWING A CONVICTION IN COUNT SIX, WHEN THE STATE NEVER
PROVED BEYOND A REASONABLE DOUBT THE SERIOUS PHYSICAL HARM
ELEMENT REGARDING THE SEVERITY OF THE INJURY, NECESSARY FOR THE
CHARGE OF VEHICULAR ASSAULT. NO MEDICAL EXPERT WHAT SO EVER
TESTIFIES TO EVEN ATTENDING THE VICTIM, THE SUPPOSED VICTIM
HIMSELF TESTIFIES THAT NO SERIOUS HARM OCCURRED.

**GROUND ELEVEN**:

**SUPPORTING FACTS**: THE APPELLATE COURT ERRED WHEN NOT
ADDRESSING CERTAIN ASSIGNMENTS OF ERROR IN THE APPELLANT'S
BRIEF THE WAY THE ERRORS WERE CONSTRUCTED AND INTENDED TO BE
ARGUED.  WHEREBY PREJUDICING THE PETITIONER THE RELIEF SOUGHT
WHEN DETERMINING THE MERITS OF THE ASSIGNMENTS OF ERROR.

**GROUND TWELVE**:

**SUPPORTING FACTS**:  THE APPELLATE COURT ERRED WHEN DENYING THE
MOTION TO CERTIFY CONFLICTS AS BEING LATE.  WHEN THE LATE
SUBMISSION WAS ALREADY EXCUSED BY THE GRANTING OF A MOTION TO
FILE INSTANTER THAT PRESENTED THE MOTION TO CERTIFY CONFLICTS.
WHEREBY VIOLATING THE LONG STANDING FEDERAL CASE LAW OF A
COURT NOT BEING ABLE TO RECONSIDER ITS PREVIOUS FINAL JUDGMENT.

(Doc. No. 1-1 at 1-12.)

On April 7 and April 28, 2011, Duncan filed motions to stay the habeas proceeding until

he had exhausted several pending state court pleadings.  (Doc. Nos. 3, 4.)  On May 6, 2011, the

Court dismissed Duncan's Petition without prejudice, pending exhaustion.  (Doc. No. 5.)

Duncan filed a Motion to Reopen on September 17, 2012.  (Doc. No. 7).  On September

18, 2012, this Court reopened the instant action with the inclusion of an additional ground for

relief identified by Duncan in his motion to reopen.  This additional ground (hereinafter referred

to as "Ground Thirteen") states as follows:

**GROUND THIRTEEN**:

**SUPPORTING FACTS**: THE TRIAL COURT HAS NOT ISSUED A FINAL
JUDGMENT OF CONVICTION IN WHICH THE PETITIONER CAN PROPERLY
APPEAL.  WHEREBY VIOLATING HIS DUE PROCESS RIGHTS OF EXHAUSTING
THE APPELLATE PROCEDURE, AND FINALITY OF HIS SENTENCE.

(Doc. No. 7 at 3.)

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the

highest court in the state in which the petitioner was convicted has been given a full and fair

-18-

opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 337, 349 (6th Cir. 2001).

### B.    Procedural Default Standard

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)).  A claim may become procedurally defaulted in two ways.  *Id*.  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).  If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[7] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue

---

[7]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule; (2) whether the state courts actually enforced the state procedural sanction; (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review; and, (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well

within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust*, 17 F.3d at 161-62. Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman,* 501 U.S. at 749-50. Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an
>> unreasonable application of, clearly established Federal law, as
>> determined by the Supreme Court of the United States; or
>>
>> (2) resulted in a decision that was based on an unreasonable
>> determination of the facts in light of the evidence presented in the State
>> court proceeding.

28 U.S.C. § 2254(d) (1996).  Clearly established federal law is to be determined by the holdings

of the United States Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL

2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010);

*Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir.

2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal

principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly

established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th

Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute

"clearly established Federal law, as determined by the Supreme Court."  *Parker*, 2012 WL

2076341 at *6.

A state court's decision is contrary to clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation

-23-

marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

### A.    Grounds One and Ten: Sufficiency of the Evidence

In Ground One, Duncan argues the trial court erred in denying his Motion for Acquittal on all counts of the Indictment because the State "insufficiently proved guilt beyond a reasonable doubt" in light of "scientific evidence and expert testimony" demonstrating he was not the driver of the vehicle in question.  In Ground Ten, he argues the State failed to prove beyond a reasonable doubt the "serious physical harm" element of Count Six; i.e. vehicular assault involving Mansfield Police Officer Miller.  Both of these grounds for relief challenge the sufficiency of the evidence supporting Duncan's convictions and were raised on direct appeal.  Thus, they are subject to the same standard on federal habeas review, set forth below.

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of

-24-

witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution."  *Heinish v. Tate*, 1993 WL 460782 at * 3 (6th Cir. 1993) *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court recently emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference. First, on direct appeal, 'it is the responsibility of the jury – not the court– to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ----, 132 S.Ct. 2, 4, 181 L.Ed.2d. 311 (2011) (per curiam).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid.* (quoting *Renico v. Lett*, 559 U.S. ----, -----, 130 S.Ct. 1855, 1862, 176 L.Ed.2d 678 (2010)).

*Coleman v. Johnson*, 132 S.Ct. 2060, 2062 (2012).  Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any rational trier of fact would conclude that petitioner . . . is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009).  Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in *its* conclusion that a rational trier of

-25-

fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id.* (emphasis in original)(citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

### 1. Ground One

On direct appeal, Duncan claimed the State failed to prove beyond a reasonable doubt that he was the driver of the vehicle in question and, therefore, his convictions on all six counts in the Indictment were not supported by the sufficiency of the evidence. *See State v. Duncan*, 2009 WL 3440025 at * 1. The state appellate court rejected this argument as follows:

> In the first assignment of error, Appellant maintains the trial court erred in denying his motion for acquittal as the State failed to establish Appellant's identity as the driver of the vehicle beyond a reasonable doubt.
>
> Criminal Rule 29(A) reads:
>
> "The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses. The court may not reserve ruling on a motion for judgment of acquittal made at the close of the state's case."
>
> "[T]he relevant inquiry * * * is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492. Thus, a trial court, when ruling on a motion brought pursuant to Crim. R. 29(A), must view the probative evidence in a light most favorable to the state and determine whether the state presented sufficient evidence on each of the essential elements of the offense charged." *State v. Martin* (1983), 20 Ohio App.3d 172, 485 N.E.2d 717.
>
> Upon review of the record, we find the evidence presented at trial, when viewed in a light most favorable to the prosecution, is sufficient to establish Appellant's identity as the driver of the vehicle at the time of the incident. Witnesses testified they observed Appellant get into the driver's side of the vehicle with the keys, and drive the vehicle out of the bar's parking lot. The testimony establishes Appellant

-26-

would not have had time to change positions with Kathy Ward prior to the pursuit. Further, Trooper Burkhart observed the vehicle during the pursuit, and testified it would not have been possible for Appellant to change positions with Ward during the pursuit. Following the crash, Appellant was found on the driver's side of the vehicle with his head lying on the driver's side window. In contrast, Ward was on her knees on the passenger side floorboard with her face on the seat. Additionally, an emergency medical technician, Justin Hartson, testified he found Appellant in the driver's seat with his head halfway out of the window. Accordingly, the trier of fact could have found Appellant was the driver of the vehicle beyond a reasonable doubt.

Appellant's first assignment of error is overruled.

*State v. Duncan*, 2009 WL 3440025 at * 3-4. *See also* Doc. No. 12-1 at 4.

In his Traverse, Duncan argues the state appellate court's determination on this issue was unreasonable because his expert testimony and "scientific evidence" overwhelmingly prove he was not the driver of the vehicle at the time of the police pursuit or the crash.[8] He emphasizes the testimony of defense medical expert Christopher Adelman that (1) the nature of Duncan's injuries were consistent with Duncan being on the passenger side of the vehicle; and, (2) the nature of Kathy Ward's injuries were consistent with her being on the driver's side.[9] Specifically, Dr. Adelman testified that Duncan's acetabulum (hip) fracture was caused by a direct, forceful blow

---

[8] Because Duncan's sufficiency claim as presented on direct appeal was limited to the State having failed to prove that Duncan was the driver, the Warden limited his argument in the Return to the sole issue of whether the state appellate court reasonably found that sufficient evidence supported the jury's finding that Duncan was the driver at the time of the offenses. (Doc. No. 12 at 30.)  Duncan does not dispute that this is the focus of Ground One, noting in the Traverse that "[a]ll charges allege Duncan was the driver of the vehicle.  So the 'identity of the offender,' in all charges is the main most essential element to be proven beyond a reasonable doubt." (Doc.No. 22 at 10.)

[9] Dr. Adelman testified that he is an emergency room physician and has a private practice in addiction medicine.  (Doc. No. 15-2 at 63.)  He did not treat Duncan on the night of the accident, but did review both Duncan's and Kathy Ward's medical records.  (Doc. No. 15-2 at 66, 71.)

-27-

to his knee and that it was consistent with the damage done to the vehicle's glove box compartment. Dr. Adelman further testified that he believed the marks on the right side of Duncan's neck were consistent with a seatbelt injury, rather than a result of the C-collar placed on Duncan after the wreck and Duncan's efforts to forcibly remove the C-collar.

Duncan also cites the expert testimony of accident reconstructionist Timothy Tuttle. Based on his analysis of the vehicle and the crash scene, Mr. Tuttle reconstructed the accident and performed an "occupant motion analysis" to determine the identity of the driver. Given the nature and relative severity of Duncan's and Ward's injuries, he concluded that Duncan was restrained in a seat belt while Ward was not. Based on his reconstruction of the accident, he offered that both occupants would have been forced in the direction of the passenger side of the vehicle. As he believed Ms. Ward was not restrained, this would explain her presence on the passenger side floor. He also indicated that (due to his being restrained by the seat belt) Duncan remained on the passenger side of the vehicle throughout the actual crash but subsequently removed the seat belt and moved towards the driver's side of the vehicle, where he was then found by Trooper Burkhart and emergency medical personnel. Based on this analysis, Mr. Tuttle testified that Kathy Ward was the driver and Duncan was the passenger at the time of the incident in question.[10] The

---

[10] Duncan also argues that Defense Exhibits E and V provide further support for his argument. Duncan explains that Defense Exhibit E "is a picture of the passenger side glovebox inside of the car." (Doc. No. 22 at 10.) He asserts the damage depicted in this Exhibit is "consistent with a knee ramming into it with hard direct force" and shows that "[t]he damage done to the glovebox is the result of the injury Duncan sustained to his left acetabulum." (Doc. No. 22 at 10.) With regard to Defense Exhibit V, Duncan describes it as "a picture taken by officials, minutes after the wreck occurred" that clearly shows an abrasion on the right side of his neck. (Doc. No. 22 at 10.) He maintains that the fact this abrasion was present just after the wreck proves it was a seat belt injury and not caused by a C-collar. (Doc. No. 22 at 10.) The Court notes that neither of these Exhibits are part of the habeas record, and Duncan has not attached them to his Traverse or moved

Warden argues there was "ample evidence, viewed in a light most favorable to the prosecution, placing Duncan as the driver of the vehicle."  (Doc. No. 12 at 32.)

Upon a careful and thorough review of the trial transcript, the Court finds the state appellate court reasonably determined that the jury could have found Duncan to be the driver of the vehicle beyond a reasonable doubt.  In resolving this claim, the state appellate court accurately summarized the evidence of record and correctly identified the applicable law.  As noted above, two witnesses (Roberta Wetzel and John Harris) testified Ms. Ward gave Duncan her car keys, and Duncan was driving the vehicle when it left the bar parking lot with Ms. Ward in the passenger seat.  (Doc. No. 14-1 at 69-70; Doc. No. 15-2 at 41.)  These witnesses also testified they followed the vehicle until the police pursuit began and did not believe Duncan would have had time to change positions with Ms. Ward.  (Doc. No. 14-1 at 71-72; Doc. No. 15-2 at 42-44.)  Trooper Burkhart testified that, once the pursuit began, the vehicle did not stop until it crashed into the Mansfield Police vehicle.  (Doc. No. 16-2 at 8-13.)  He stated he did not believe Duncan would have had time, after leaving the bar parking lot and during the pursuit, to switch seats with Ms. Ward.  (Doc. No. 16-2 at 8-13.)  Trooper Burkhart and paramedics Hartson and Lucas testified they responded to the crash and found Duncan on the driver's side.  (Doc. No. 13-4 at 45-48; Doc. No. 15-1 at 31, Doc. No. 16-2 at 12-13.)  Finally, Dr. Piyush Sheth testified that, based on his observations and treatment of both Duncan and Ward on the night in question, he

---

to supplement the record to include them. The Court finds, however, that it is unnecessary to examine the actual Defense Exhibits E and V to resolve this ground for relief.  Both Dr. Adelman and Mr. Tuttle testify extensively about these exhibits. Given that this Court does not conduct a *de novo* review of the evidence in resolving a sufficiency of the evidence claim, review of these expert's testimony about the Exhibits in question is all that is necessary.

-29-

believed the nature of Duncan's injuries would place him on the driver's side of the vehicle. (Doc. No. 14-2 at 71.)  Dr. Sheth also testified the injury on Duncan's neck was not likely to have been caused by a seal belt.  (Doc. No. 14-3 at 1-3.)

While Duncan argues his expert testimony is more credible than the testimony noted above, it was not unreasonable for the state appellate court to determine that sufficient evidence supported the jury's finding to the contrary.  The jury was entitled to find the testimony of Ms. Wetzel, Mr. Harris, Trooper Burkhart, Paramedics Hartson and Lucas, and Dr. Sheth more credible than the opinions expressed by Dr. Adelman and Mr. Tuttle.  Moreover, the jury was permitted to draw the inference that Duncan was the driver at the time of the offenses, in light of witness testimony that he was driving the vehicle when it left the parking lot and would not have had time to change positions with Ms. Ward prior to the crash.  *See Coleman*, 132 S.Ct. at 2064 ("*Jackson* leaves to juries broad discretion in deciding what inferences to draw from the evidence presented at trial, requiring only that jurors 'draw reasonable inferences from basic facts to ultimate facts'").

Based on the above, and applying the "double deference" required under the AEDPA, the Court is unable to say that the state appellate court's decision was unreasonable.  Accordingly, Duncan's First Ground for Relief is without merit.

### 2.  Ground Ten

In Ground Ten, Duncan argues the State failed to prove beyond a reasonable doubt the "serious physical harm" element of Count Six; i.e. vehicular assault involving Mansfield Police Officer Miller.  The state appellate court rejected this argument on direct appeal as follows:

In the tenth assignment of error, Appellant argues there is insufficient evidence to

support his conviction for vehicular assault. Specifically, Appellant asserts the State failed to present evidence of serious physical harm to Officer Miller as to Count 6 of the indictment.

In *State v. Jenks* (1981), 61 Ohio St.3d 259, 574 N.E.2d 492, superseded by constitutional amendment on other grounds in *State v. Smith*, 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id*. at paragraph two of the syllabus.

Ohio Revised Code Section 2901.01(A)(5) defines "serious physical harm" as:

"(5) "Serious physical harm to persons" means any of the following:

"(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

"(b) Any physical harm that carries a substantial risk of death;

"(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

"(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

"(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain."

Upon review of the record, the evidence presented at trial established Officer Miller suffered a brief loss of consciousness, and suffered injuries to his neck and back causing him to miss several days of work and requiring ongoing physical therapy. Accordingly, viewing the evidence in a light most favorable to the prosecution, the jury could reasonably find the essential elements of vehicular assault proven beyond a reasonable doubt.

Appellant's tenth assignment of error is overruled.

*State v. Duncan*, 2009 WL 3440025 at * 10-11.

Duncan argues the decision is unreasonable because the State failed to introduce Officer

Miller's medical records or present testimony from a treating physician or medical expert

regarding the nature of Miller's injuries or the medical treatment he received.  Duncan also argues

the State failed to present medical evidence establishing (1) Miller needed to miss work as a

result of the injuries he sustained; or, (2) the nature or necessity of  Miller's ongoing physical

therapy.  In the absence of such evidence, Duncan argues "[i]t is well established" under both

federal and state case law that "the serious physical harm element is insufficiently established."

(Doc. No. 22 at 25.)

The Warden argues the state appellate court's decision is reasonable in light of Officer

Miller's testimony that he suffered injuries to his left knee, left hip, neck and back that caused

him to miss work and required ongoing physical therapy.  He also emphasizes Trooper Burkhart's

testimony that Officer Miller was unresponsive to questioning directly after the accident,

indicating a loss of consciousness.

At trial, Officer Miller testified that he was on-duty on the night of May 19, 2006 and

patrolling the north end of Mansfield.  (Doc. No. 14-2 at 24-25.)  At around 2:00 a.m, the

dispatcher indicated a subject had fled from the State Highway Patrol in the vicinity of Officer

Miller's location.  *Id*. at 25-26.  Shortly thereafter, Officer Miller heard sirens approaching from

the south when "out of nowhere came a set of headlights up over the hill . . . coming the wrong

way on the one-way [street] at an extremely high rate of speed."  *Id*. at 27.  Officer Miller testified

the vehicle hit a concrete planter, "launched . . . into the air," came through a tree, and landed on

the hood of his car.  *Id*. at 28.  He testified his vehicle was tipped up on its nose "so that I was

-32-

kind of looking down at the roadway;" spun around; and, "when we came to a rest the engine compartment of that vehicle was in the driver's door of my vehicle." *Id.*

Officer Miller testified his left side, neck and back were "hurting," and he "felt like, what they call a stinger, for those who play football, when you get hit real hard [and] it just kind of buzzes up your body." *Id.* He stated he sustained a cut to his forehead, injuries to his left knee and hip, and a sprain to his neck and back. *Id.* at 31-32. He testified the paramedics placed him on a backboard, put a C-collar on "to stabilize [his] neck," and transported him to the hospital. *Id.* at 31-32. He also stated he did not lose consciousness. *Id.* at 28-29. As a result of his injuries, Officer Miller testified he missed several days of work and still goes to physical therapy once or twice a week for his upper back and neck. *Id.* at 32-33.

The Court finds the state appellate court reasonably determined the above testimony was sufficient to establish that Officer Miller suffered "serious physical harm" within the meaning of Ohio Revised Code 2901.01(A)(5). Officer Miller testified he sustained injuries to his forehead, knee, hip, neck and back. These injuries necessitated immediate treatment at the hospital, caused him to miss work for several days, and required him to go to physical therapy once or twice a week up until the time of trial. Although medical evidence was not presented to substantiate the nature and extent of these injuries, Ohio courts have held that "[w]here injuries to the victim are serious enough to cause him or her to seek medical treatment, the finder of fact may reasonably infer that the force exerted on the victim caused serious physical harm as defined by R.C. 2901.01(A)(5)." *State v. Lee*, 2003 WL 22411213 at * 3 (Ohio App. 8th Dist. Oct. 23, 2003). *See also State v. Brown*, 2006 WL 3446238 at * 5 (Ohio App. 8th Dist. Nov. 30, 2006); *State v. Petty*, 2012 WL 2524102 at * 6 (Ohio App. 10th Dist. June 29, 2012). Moreover, state courts have

applied this principle to uphold convictions for offenses requiring a showing of "serious physical harm," even where no medical evidence is presented and this element is established solely through victim and witness testimony. *See e.g. State v. Euler*, 2004 WL 1595099 at * 3 (Ohio App. 6th Dist. July 16, 2004) (finding vehicular assault conviction was supported by the sufficiency of the evidence where "serious physical harm" was established solely through victim testimony); *State v. Jackson*, 2004 WL 2914972 at * 3 (Ohio App. 2nd Dist. Dec. 10, 2004) (upholding vehicular assault conviction where "serious physical harm" was established solely through victim testimony); *State v. Williams*, 2004 WL 1752965 at * 4 (Ohio App. 8th Dist. Aug. 5, 2004) (finding felonious assault conviction was not against the manifest weight of the evidence where "serious physical harm" was established solely through victim and witness testimony and photographs of injuries).[11]

Based on the above, and applying the "double deference" required under the AEDPA, the Court is unable to say that the state appellate court's decision on this issue was unreasonable. Accordingly, Duncan's Tenth Ground for Relief is without merit.[12]

---

[11]  Although there appears to be a conflict between Officer Miller's testimony that he did not lose consciousness and Trooper Burkhart's testimony that Miller was "unresponsive to questioning," this does not effect the Court's analysis.  Even assuming the state appellate court incorrectly found Officer Miller lost consciousness, it is uncontested that Miller suffered injuries to his forehead, knee, hip, back and neck which required immediate treatment at the hospital.  Moreover, Miller clearly testified these injuries caused him to miss work and required him to attend physical therapy.  This testimony is sufficient for the state appellate court's determination that Duncan's vehicular assault conviction was supported by the sufficiency of the evidence.

[12] To the extent Duncan's First and/or Tenth Grounds for Relief could be construed as arguing his convictions were against the manifest weight of the evidence, such claims are not cognizable on federal habeas review.  *See Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *Hess v. Eberlin,*2006 WL 2090093 at *7 (S.D. Ohio 2006).

**B.**    <u>**Grounds Two and Three**</u>**: Discrepancy between Indictment and Verdict Form**

In Grounds Two and Three, Duncan argues the trial court violated his due process rights when it sentenced him on Counts One (failure to comply with the signal of a police officer) and Six (vehicular assault) despite the fact that the jury verdict form relative to those counts was inconsistent with the indictment in several respects.  (Doc. No. 22 at 12-13.)  The Warden maintains Duncan failed to contemporaneously object and, therefore, both of these claims are procedurally defaulted.  (Doc. No. 12 at 36-38.)

Duncan raised these claims on direct appeal.  *See State v. Duncan*, 2009 WL 3440025 at * 2 (Ohio App. 5th Dist. Oct. 21, 2009).  The state appellate court rejected them as follows:

> {¶26} Appellant's second and third assignments of error raise common and interrelated issues; therefore, we will address the arguments together.
>
> {¶ 27} Initially, we note, Appellant did not object at trial to either alleged error in the trial court; thereby waiving all but plain error.  In order to find plain error under Crim. R. 52(B), it must be determined, but for the error, the outcome of the trial clearly would have been otherwise.  *See State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.  Even if the defendant satisfies this burden, an appellate court has discretion to disregard the error and should correct it only to "prevent a manifest miscarriage of justice."  *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (citations omitted).
>
> {¶ 28} As to Count 1 of the indictment, Appellant argues the indictment alleged Appellant failed to comply with the order or signal of a police officer and his operation of the motor vehicle "was a proximate cause of serious physical harm to persons or property," whereas the verdict form for Counts 1 and 2  find Appellant guilty of failure to comply with the order or signal of a police officer and find Appellant's operation of the motor vehicle "caused a substantial risk of serious physical harm to persons or property."
>
> {¶ 29} Upon review of the record, both victims in fact suffered serious physical harm; therefore, the discrepancy between the language of the indictment and the language in the verdict form for Count 1 did not amount to plain error. Further, the jury's finding Appellant created a substantial risk of

-35-

serious physical harm, as opposed to causing serious physical harm as a proximate result of the operation of the motor vehicle, does not change the degree of the offense under R.C. 2945.75(A). Therefore, we find any alleged error to be harmless.

{¶ 30} With regard to Count 6 of the indictment, Appellant argues the verdict form and sentencing entry refer to the charge as "aggravated vehicular assault"; rather than, vehicular assault as charged in the indictment.

{¶ 31} Count 6 of the indictment charges Appellant with violating R.C. 2903.08(A)(2)(b), which reads:

{¶ 32} "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways:

{¶ 33} " * * *

{¶ 34} "(2) In one of the following ways:

{¶ 35} "(b) Recklessly.

{¶ 36} Subsection (C) of the statute states:

{¶ 37} "(C)(1) Whoever violates division (A)(2) or (3) of this section is guilty of vehicular assault and shall be punished as provided in divisions (C)(2) and (3) of this section."

{¶ 38} While the trial court incorrectly referred to the offense in Count 6 as "aggravated vehicular assault" in the verdict form, on the sentencing entry and in its instructions, the trial court properly instructed the jury as to the elements of the offense of vehicular assault. Therefore, the error did not impact the result of Appellant's trial, as Appellant was properly convicted of vehicular assault against Officer Miller as charged in the indictment.

{¶ 39} The trial court instructed the jury:

{¶ 40} "Now there is a second charge of vehicular assault against Officer Richard Miller which is slightly different. Before you can find him guilty of the aggravated vehicular assault against Officer Richard Miller, you must find beyond a reasonable doubt that on or about May 19, 2006, here in Richland

County, Mr. Duncan while operating a motor vehicle caused the serious physical harm to Officer Miller recklessly. So that is a new term, "recklessly."

{¶ 41} "A person acts 'recklessly' when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct in operating the motor vehicle is likely to cause serious physical injury to another.

{¶ 42} " 'Risk,' as I said before, means a significant possibility, as contrasted with a remote possibility, that a certain result may occur.

{¶ 43} "Now, If you do find that the state did prove beyond a reasonable doubt all the essential elements of either one or both of these charges of aggravated vehicular assault as I defined them for you, your verdict would be 'guilty' of one or both of the charges according to your findings. If, on the other hand, you find that the prosecutor failed to prove beyond a reasonable doubt any one or more of the essential elements of either one or both of these charges of aggravated vehicular assault, your verdict would have to be 'not guilty' of that charge or those charges according to your findings."

{¶ 44} Tr. at 1184-1185.

{¶ 45} We find the trial court's incorrect reference to the charged crime of vehicular assault as aggravated vehicular assault did not constitute plain error nor result in prejudice to the Appellant.

{¶ 46} Accordingly, Appellant's second and third assignments of error are overruled.

*State v. Duncan*, 2009 WL 3440025 at * 4-6.

## 1. Procedural Default

Grounds Two and Three are procedurally defaulted.  It is well-established that a petitioner waives an alleged error when he fails to make a contemporaneous objection.  *Osborne v. Ohio*, 495 U.S. 103, 124 (1990) (recognizing Ohio's long-standing contemporaneous objection rule).  Moreover, the Sixth Circuit has held that Ohio's contemporaneous objection rule constitutes an adequate and independent state ground barring federal review absent a showing of cause for the waiver and resulting prejudice.  *See e.g. White v. Mitchell,* 431 F.3d 517, 525 (6th

Cir. 2005); *Mason,* 320 F.3d at 635; *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).  Here, Duncan did not object to either the jury instructions or the jury verdict form as being inconsistent with the indictment, resulting in the state appellate court's review  under a plain error analysis. Accordingly, the first three elements of the *Maupin* test are satisfied as Duncan failed to comply with the contemporaneous objection rule, the state appellate court actually enforced the rule, and said rule constitutes an "independent and adequate" state ground on which the state can foreclose federal review.  As such, Grounds Two and Three are procedurally defaulted under *Maupin.*

Moreover, Duncan has failed to demonstrate either cause or prejudice to excuse the default.  To establish "cause," Duncan must show "something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753.  *See also Franklin,* 434 F.3d at 417; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003).  Duncan does not argue, and there is nothing on the face of record to suggest, that there exists "cause" to excuse his procedural default.[13]

Moreover, the Court finds no evidence of "actual prejudice."  *See Ambrose v. Booker*, 684

---

[13]  Duncan does not argue that his failure to object to the verdict forms at trial should be excused because of the ineffectiveness of his trial counsel.  Even if the Petition were liberally construed to raise such an argument, the Court would reject it. Ineffectiveness of counsel may serve as "cause" to excuse a procedural default under certain circumstances. *Mason*, 280 F.3d at 605.  However, in order to excuse a default, the ineffective assistance of counsel claim must not *itself*  be procedurally defaulted.  *See Edwards v. Carpenter*, 529 U.S. 446, 450-451 (2000); *Wogenstahl v. Mitchell*, 668 F.3d 307, 321 (6th Cir. 2012). Here, Duncan does not direct this Court's attention to anything in the record indicating he raised a claim of ineffective assistance of trial counsel in the state courts based on counsel's failure to object to the jury verdict form.  Nor does he indicate any potentially viable means of  raising such a claim in the state courts at this point in time.  Thus, ineffective assistance of trial counsel could not serve as either cause or prejudice to excuse the default of Grounds Two or Three.

F.3d 638, 649 (6th Cir. 2012) (finding that "having shown cause, petitioners must show actual prejudice to excuse their default").  As noted *supra*, prejudice does not occur unless the petitioner demonstrates that the trial was "infected with constitutional error" and there is a "reasonable probability" the outcome of the trial would have been different absent the alleged constitutional errors.  *See Franklin,* 434 F.3d at 417; *Mason*, 320 F.3d at 629.  In the instant case, Duncan has failed to make such a showing.  With respect to Count One, the state appellate court correctly notes both Kathy Ward and Officer Miller suffered "serious physical harm" as a result of Duncan's operation of a motor vehicle.  Thus, Duncan has not demonstrated a "reasonable probability" that the outcome of the trial would have been different as a result of the inconsistency between the "proximate cause" language in the indictment and the "substantial risk" language in the jury instructions and verdict form.  With respect to Count Six, while the verdict form incorrectly referred to this charge as aggravated vehicular assault, the trial court correctly instructed the jury as to the elements of vehicular assault, in a manner consistent with the indictment.  (Doc. No. 17-3 at 59-60.)  Accordingly, the Court finds Duncan has not demonstrated he was prejudiced by the incorrect references in the verdict form.

Finally, Duncan has not come forward with any new or reliable evidence of  "actual innocence."  While he asserts he is actually innocent of all the charges in the indictment, Duncan has not come forward with any new or reliable evidence supporting this claim.  Moreover, as discussed *supra*, the state appellate court was not unreasonable in determining that the jury could have found Duncan to be the driver of the vehicle beyond a reasonable doubt.  Accordingly, the Court finds Grounds Two and Three are procedurally defaulted.

## 2.  Merits

Even if it were to review Grounds Two and Three on the merits, the Court would find them to be unavailing.  The state appellate court conducted a plain error review of these claims, which does not qualify as an "adjudication on the merits" for purposes of  Section 2254(d).  *See Fleming v. Metrish,* 556 F.3d 520, 549 (6th Cir. 2009); *Frazier v. Bobby*, 2011 WL 5086443 at * 26 (N.D. Ohio Oct. 25, 2011).  Thus, the deference due under the AEDPA does not apply, and *de novo* review of these claims is appropriate.  *Fleming*, 556 F.3d at 549.

Duncan maintains his due process rights were violated because "the jury convicted [him] of an offense not charged by the indictment." (Doc. No. 22 at 13.)  As an initial matter, it is well-settled that the federal guarantee of a grand jury indictment does not apply to the states.  *See e.g. Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984); *Fortson v. Morgan*, 2012 WL 1854305 at * 7 (N.D. Ohio March 27, 2012).  In addition, "the Constitution does not require any particular state indictment rule . . . [or] an indictment at all if sufficient notice of the charges is given in some other manner." *Koontz,* 731 F.2d at 369.  Nevertheless, the Supreme Court has recognized that a state defendant's right to fair notice and an opportunity to defend is protected by the Due Process Clause of the Fourteenth Amendment.  *See Jackson,* 443 U.S. at 314 ("It is axiomatic that a conviction upon a charge not made or upon a charge not tried constitutes a denial of due process."); *Cole v. Arkansas*, 333 U.S. 196, 201 (1948).  In the habeas context, "due process mandates only that the indictment provide the defendant with 'fair notice of the charges against him to permit adequate preparation of his defense.' " *Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006) (quoting *Koontz,* 731 F.2d at 369).  Fair notice has been given when "the offense [is] described with some precision and certainty so as to apprise the accused of the crime with

-40-

which he stands charged.  Such definiteness and certainty are required as will enable a

presumptively innocent man to prepare for trial."  *Koontz*, 731 F.2d at 369.  *See also Williams*,

731 F.2d at 535.

Giving his *pro se* Petition a liberal construction, it appears Duncan is arguing he was not

provided fair notice of the charges against him with respect to Count One because his conviction

on that Count (as set forth in the verdict form) resulted from either a constructive amendment of

or variance from the indictment.[14]  The Sixth Circuit has explained that "[a] constructive

amendment results when the terms of an indictment are in effect altered by the presentation of

evidence and jury instructions which so modify essential elements of the offense charged that

there is a substantial likelihood that the defendant may have been convicted of an offense other

than one charged in the indictment."  *United States v. Smith*, 320 F.3d 647, 656 (6th Cir. 2003).

*See also Stirone,* 361 U.S. at 216 (noting that "a court cannot permit a defendant to be tried on

charges that are not made in the indictment against him"); *United States v. Budd*, 496 F.3d 517,

521 (6th Cir. 2007).  A constructive amendment is *per se* prejudicial and requires reversal of the

resulting conviction.  *Budd*, 496 F.3d at 521.  *See also United States v. Hynes*, 467 F.3d 951, 962

(6th Cir. 2006).

Variances, by contrast, are not *per se* prejudicial.  *Budd*, 496 F.3d at 521.  The Sixth

Circuit has explained that, "[g]enerally speaking, a variance 'occurs when the charging terms [of

---

[14]  While the Supreme Court has not used the terms "constructive amendment" and
"variance" in this context, it recognized the concepts addressed herein in *Berger v.
United States*, 295 U.S. 78, 81 (1935) and *Stirone v. United States*, 361 U.S. 212, 216
(1960).  The Sixth Circuit has interpreted these cases as constituting "clearly established
federal law" for purposes of federal habeas review, when considering a state court's
determination that an indictment had not been constructively amended.  *See Swanigan v.
Sherry*, 2012 WL 4946291 (6th Cir. Oct. 18, 2012).

the indictment] are unchanged, but the evidence at trial proves facts materially different from those alleged in the indictment.'" *Id*. (quoting *United States v. Prince*, 214 F.3d 740, 756-57 (6th Cir. 2000). "To obtain reversal of a conviction because of a variance between the indictment and the evidence produced at trial, a defendant must satisfy a two-prong test: (1) the variance must be demonstrated and (2) the variance must affect some substantial right of the defendant." *Prince,* 214 F.3d at 757 (citing *United States v. Maliszewski*, 161 F.3d 992, 1014 (6th Cir. 1998)); *see also United States v. Hynes*, 467 F.3d 951, 962 (6th Cir. 2006); *United States v. Suarez*, 263 F.3d 468, 478 (6th Cir. 2001). Prejudice to substantial rights occurs if the defendant is "not enabled to present his defense and not be taken by surprise by the evidence offered at trial," or is not "protected against another prosecution for the same offense." *Budd,* 496 F.3d at 527 (quoting *Berger v. United States*, 295 U.S. 78, 82 (1935)).

The analysis is slightly different where the difference between the indictment and the jury instructions is not the facts of the offense, but the legal theory. *Budd*, 496 F.3d at 522. In these circumstances, "[t]he 'key question in determining whether [such a] case involves a variance or a constructive amendment [i]s whether' the offense described by the indictment and the one described by the jury instructions are 'two alternative crimes or merely two alternative methods by which the one crime . . . could have been committed.'" *Id*. (quoting *Prince*, 214 F.3d at 758) (additional internal quotations omitted). If the latter, any discrepancy between the indictment and the jury instructions is considered a variance and, therefore, not *per se* prejudicial. *Id*.

Here, Count One of the indictment charges that Duncan ". . . on or about the 19th day of May, 2006, at the County of Richland, did operate a motor vehicle so as to willfully elude or flee a police officer after receiving a visible or audible signal from a police officer to bring his motor

vehicle to a stop and the operation of the motor vehicle by the offender **was a proximate cause** of serious physical harm to persons or property, in violation of section 2921.331(B)(5)(a)(i) of the Ohio Revised Code, a felony of the third degree." (Doc. No. 12-2 at 1) (emphasis added). Count Two contains the same language except that it charges that Duncan's "operation of the motor vehicle . . . **caused a substantial risk of** serious physical harm to persons or property, in violation of section 2921.331(B)(5)(a)(ii) of the Ohio Revised Code, a felony of the third degree." (Doc. No. 12-2 at 1) (emphasis added).

As completed by the jury, the verdict form first states that the jury finds Duncan guilty of the crime of failure to comply with the order or signal of a police officer.[15] (Doc. No. 12-55 at Exhibit pp. 4-6.) The form then indicates that the jury finds the following: (1) "[t]he prosecutor did prove that Mr. Duncan's operation of the motor vehicle caused a substantial risk of serious physical harm to the person of Kathy Ward or to property;" and, (2) "[t]he prosecutor did prove that Mr. Duncan's operation of the motor vehicle caused a substantial risk of serious physical harm to the person of Officer Richard Miller or to property." *Id.* (emphasis in original). The trial court's jury instructions were consistent with the above verdict form. (Doc. No. 17-3 at 52-55.)

The Court finds Duncan's due process rights were not violated by the discrepancies between the indictment and the verdict form with respect to Count One. Both the indictment and the verdict form specify a violation of the same statute, and there is no indication the State

---

[15]  The Warden did not separately include the jury verdict form as part of the state court record. However, in the Return, the Warden notes that a copy of the jury verdict form is attached as an exhibit to Duncan's appellate brief, filed in the state appellate court on May 19, 2010. (Doc. Nos. 12 at 44, fn 4; 12-55 at Exhibit pages 4-6.) Duncan's appellate brief, including the jury verdict form attached thereto, is marked as Exhibit 55 to the Return. (Doc. No. 12-55.) Thus, the Court finds the jury verdict form is properly before it for purposes of habeas review.

presented evidence at trial of a different offense than that alleged in the indictment.  Moreover,

even if the discrepancy between the "proximate cause" language in the indictment and the

"substantial risk" language in the verdict form were considered to alter the legal theory

underlying the offense charged, the Court finds the offense described by the indictment and the

one described by the verdict form and jury instructions constitute "two alternative methods by

which the one crime . . . could have been committed" under Ohio Rev. Code 2921.331(B)(5)(a).

That statute provides as follows:

> (B) No person shall operate a motor vehicle so as to willfully elude or flee a
> police officer after receiving a visible or audible signal from a police officer to
> bring the person's motor vehicle to a stop.
>
> * * *
>
> (5) (a) A violation of division (B) of this section is a felony of the third degree if
> the jury or judge as trier of fact finds **any of the following** by proof beyond a
> reasonable doubt:
>
> (i) The operation of the motor vehicle by the offender was a proximate cause of
> serious physical harm to persons or property.
>
> (ii) The operation of the motor vehicle by the offender caused a substantial risk
> of serious physical harm to persons or property.

Ohio Rev. Code 2921.331(B)(5)(a) (emphasis added).

Under the clear language of this statute, operation of a motor vehicle that "was a

proximate cause of" or "caused a substantial risk of" serious physical harm to persons or property

both constitute a violation of division (B) of the statute and are both considered felonies of the

third degree.  Thus, the discrepancy between the indictment and verdict form simply reflected two

alternative methods by which the crime of failure to comply with an order or signal of a police

officer could have been committed.  Therefore, at best, this discrepancy would constitute a

variance, rather than a constructive amendment.  As noted above, variances are not *per se* prejudicial.  *Budd*, 496 F.3d at 521.  In order to obtain habeas relief, Duncan would have to show prejudice to his substantial rights; i.e. that he was hampered in his ability to present a defense, surprised by the evidence offered at trial, or not protected against another prosecution for the same offense.  *Berger*, 295 U.S. at 82.

The Court finds none of these circumstances present in the instant case.  The conduct for which Duncan was convicted was the same, regardless of the fact that the verdict form contained the term "substantial risk" rather than "proximate cause."  Moreover, Duncan does not argue that the State presented evidence it would not otherwise have presented because of the inclusion of the "substantial risk" language in the indictment.  Further, Duncan does not argue that he was surprised at trial or that his defense was hampered as a result of this issue.  Finally, the Court finds no suggestion that Duncan could be subjected to double jeopardy as a result of the discrepancy between the indictment and the verdict form with respect to Count One. Accordingly, Duncan is not entitled to habeas relief with respect to Ground Two.

The Court reaches a similar conclusion with respect to Count Six.  In this Count, the indictment charges Duncan with the offense of Vehicular Assault, as follows:  ". . . on or about the 19th day of May, 2006, at the County of Richland, while operating or participating in the operation of a motor vehicle, [Duncan] did recklessly cause serious physical harm to another person, the offender was driving under a suspension imposed under Chapter 4507, or any other provision of the Revised Code, in violation of section 2903.08(A)(2)(b) of the Ohio Revised Code, a felony of the third degree."  (Doc. No. 12-2 at 3.)  In instructing the jury, the trial court indicated that this Count related to Officer Miller and mistakenly referred to it as "Aggravated

Vehicular Assault." (Doc. No. 17-3 at 59.) This error is reflected in the verdict form, which states that "[w]e the jury find the defendant Roy Duncan [guilty] of aggravated vehicular assault against Officer Richard Miller." (Doc. 22-8 at 2.) The verdict form goes on to state, under the heading "VII," that the jury "further find[s] that: √ The Prosecutor did prove that Mr. Duncan operated the motor vehicle on May 19, 2006 with a suspended driver's license." *Id.* (emphasis in original).

While the trial court mistakenly referred to the offense as "aggravated vehicular assault" in both the jury instructions and verdict form, it correctly instructed the jury regarding the elements of the indicted offense. In instructing the jury, the trial court correctly differentiated between Counts Five and Six, explaining that they were "two different charges." (Doc. No. 17-3 at 58.) Specifically, the court explained that, in order to find Duncan guilty of aggravated vehicular assault against Kathy Ward as set forth in Count Five, the jury had to find that Duncan, "while operating a motor vehicle, caused serious physical harm to Kathy Ward as a proximate result of committing some form of operating a motor vehicle under the influence of alcohol." *Id.* at 59. In reference to Count Six, the court explained that "there is a second charge of vehicular assault against Officer Richard Miller which is slightly different." The court stated that "[b]efore you can find [Duncan] guilty of aggravated vehicular assault against Officer Richard Miller, you must find beyond a reasonable doubt that on or about May 19, 2006, here in Richland County, Mr. Duncan while operating a motor vehicle caused the serious physical harm to Officer Miller recklessly." *Id.* at 59-60. The court then went on to define the term "recklessly." *Id.* at 60.[16]

---

[16] Ohio Revised Code 2903.08(A)(2)(b) provides that: "(A) No person, while operating or participating in the operation of a motor vehicle . . . shall cause serious physical harm to another person . . . in any of the following ways: * * * (2) In one of the following

Thus, although the trial court incorrectly referred to Count Six as "aggravated vehicular assault" in both the instructions and the verdict form, it correctly explained the elements of the offense of vehicular assault in a manner consistent with the indictment.  Accordingly, there is no indication that Duncan was convicted of an offense other than the one charged in Count Six.  In other words, the Court finds no constructive amendment or variance occurred with respect to this Count. [17]  Accordingly, and for all the reasons set forth above, the Court finds Duncan is not entitled to habeas relief with respect to Ground Three.

### C.  <u>Grounds Four and Six</u>:  Double Jeopardy

In Ground Four, Duncan argues that Count Three (operating a motor vehicle under the influence of alcohol) ("OVI") is a lesser included offense of Count Five (aggravated vehicular assault and, therefore, the trial court violated his double jeopardy rights by sentencing him on both.  In Ground Six, Duncan maintains the trial court erred when it consecutively sentenced him for failure to comply with the order or signal of a police officer (Count One) and aggravated vehicular assault (Count Five), when both of those convictions relied on "the same exact serious physical harm element against the same person," i.e. Kathy Ward.

The Warden argues Duncan is not entitled to habeas relief on Ground Four because the

---

ways: * * * (b) Recklessly."

[17]  Duncan also argues his due process rights were violated because (1) "the jury never found the degree of the offense or the aggravating element necessary to justify the enhanced sentence he received in count six as required by O.R.C. 2945.75(A)(2)," and, (2) his conviction on Count Six was enhanced by virtue of an aggravating element found in a "separate count," i.e. the verdict form's finding of the driving under suspension ("DUS") element under the heading "VII."  The Court rejects these arguments for the reasons set forth *infra*, in connection with Grounds Five and Seven of the instant Petition.

state appellate court agreed he could not be sentenced on both Counts Three and Five, remanded

for re-sentencing, and the trial court thereafter merged Duncan's sentence on Count Three into

Count Five.  With respect to Ground Six, the Warden argues this ground raises a purely state law

sentencing issue that is not cognizable in habeas.  (Doc. No. 12 at 43-44.)

The state appellate court addressed these claims jointly on direct appeal as follows:

Appellant's fourth and sixth assignments of error raise common and interrelated issues; therefore, we will address the arguments together.

{¶ 48} Appellant maintains the trial court erred in imposing sentences for both Count 3, driving under the influence, in violation of R.C. 4511.19(A)(1 (a) and Count 5, aggravated vehicular assault, in violation of R.C. 2903.08(A)(1)(a).

{¶ 49} R.C. 4511.19(A)(1)(a) reads:

{¶ 50} "(A)(1) No person shall operate any vehicle, streetcar, or trackless trolley within this state, if, at the time of the operation, any of the following apply:

{¶ 51} "(a) The person is under the influence of alcohol, a drug of abuse, or a combination of them."

{¶ 52} R.C. 2903.08(A)(1)(a) reads:

{¶ 53} (A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft, shall cause serious physical harm to another person or another's unborn in any of the following ways:

{¶ 54} "(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance;"

{¶ 55} In *State v. Rance*, 85 Ohio St.3d 632, 710 N.E.2d 699, 1999-Ohio-291, the Ohio Supreme Court held offenses are of similar import if the offenses "correspond to such a degree that the commission of one crime will result in the commission of the other."  *Id*.  The *Rance* court further held courts should compare the statutory elements in the abstract.  *Id.* at 636, 710 N.E.2d 699.

-48-

{¶ 56} In clarifying *Rance*, the Court, in *State v. Cabrales*, 118 Ohio St.3d 54, 886 N.E.2d 181, 2008-Ohio-1625, syllabus, instructed as follows:

{¶ 57} "In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), courts are required to compare the elements of offenses in the abstract without considering the evidence in the case, but are not required to find an exact alignment of the elements. Instead, if, in comparing the elements of the offenses in the abstract, the offenses are so similar that the commission of one offense will necessarily result in the commission of the other, then the offenses are allied offenses of similar import."

{¶ 58} According to *Cabrales*, the sentencing court, if it has initially determined two crimes are allied offenses of similar import, then proceeds to the second part of the two-tiered test and determines whether the two crimes were committed separately or with a separate animus. *Id*. at 57, 886 N.E.2d 181, citing *State v. Blankenship* (1988), 38 Ohio St.3d 116, 117, 526 N.E.2d 816.

{¶ 59} The Ohio Supreme Court revisited the issue of allied offenses of similar import in *State v. Brown*, 119 Ohio St.3d 447, 895 N.E.2d 149, 2008-Ohio-4569, noting the tests for allied offenses of similar import are rules of statutory construction designed to determine legislative intent. *Id*. at 454, 895 N.E.2d 149.  The Court concluded that while the two-tiered test for determining whether offenses constitute allied offenses of similar import is helpful in construing legislative intent, it is not necessary to resort to that test when the intent of the legislature is clear from the language of the statute. *Id*.

{¶ 60} More recently, the Ohio Supreme Court addressed the issue in *State v. Winn*, 121 Ohio St.3d 413, 905 N.E.2d 154, 2009-Ohio-1059.  In *Winn*, the Court considered whether kidnaping and aggravated robbery are allied offenses of similar import.  In ultimately finding such offenses to be of similar import under the *Cabrales* test, the Ohio Supreme Court in *Winn* did not consider the societal interests underlying the statutes to determine legislative intent, and determined legislative intent solely by applying R.C. 2941.25.  The *Winn* court stated that, in Ohio, we discern legislative intent on this issue by applying R.C. 2941.25, as the statute is a "clear indication of the General Assembly's intent to permit cumulative sentencing for the commission of certain offenses." *Id*. at ¶ 6, 905 N.E.2d 154. We noted in *Varney, supra*, that the Ohio Supreme Court in *Brown* expanded the first step of the allied offense analysis by adding the additional factor of societal interests protected by the statutes. *Varney*, at ¶ 16, citing *State v. Boldin,* Geauga App. No.2007-G-2808, 2008-Ohio-6408.  In light of the Supreme Court's analysis in *Winn*, societal interest may be a tool to be used in some circumstances in determining if the intent of the legislature is clear

from the criminal statutes being compared.  *See State v. Mills*, Tuscarawas App.No.2007AP070039, 2009-Ohio-1849, ¶ 212.

{¶ 61} In the case *sub judice*, we find the charges of DUI, in violation of R.C. 4511.19(A)(1)(a), and aggravated vehicular assault, in violation of R.C. 2903.08(A)(1)(a), to be allied offenses of similar import.

{¶ 62} R.C. 2903.08(A)(1)(a) specifically requires the State to prove a violation of R.C. 4511.19 or a substantially equivalent municipal ordinance as an element of the offense.  Accordingly, the commission of aggravated vehicular assault will necessarily result in the commission of driving under the influence as charged.

{¶ 63} Appellant further maintains the trial court erred in imposing consecutive sentences for Counts 1 and 5, as the offenses are allied offenses of similar import.

{¶ 64} In Count 1, Appellant was convicted of failure to comply with the order of a police officer, in violation of R.C. 2921 .331, in relation to Kathy Ward. The statute reads,

{¶ 65} "(B) No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop.

{¶ 66} "(C)(1) Whoever violates this section is guilty of failure to comply with an order or signal of a police officer.

{¶ 67} " * * *

{¶ 68} (5)(a) A violation of division (B) of this section is a felony of the third degree if the jury or judge as trier of fact finds any of the following by proof beyond a reasonable doubt:

{¶ 69} "(i) The operation of the motor vehicle by the offender was a proximate cause of serious physical harm to persons or property. * * * "

{¶ 70} Appellant was further convicted in Count 5 of aggravated vehicular assault, in violation of RC. 2903.08(A)(1)(a), relating to Kathy Ward. The statute reads:

{¶ 71} "(A) No person, while operating or participating in the operation of a motor vehicle, motorcycle, snowmobile, locomotive, watercraft, or aircraft,

-50-

shall cause serious physical harm to another person or another's unborn in any of the following ways:

{¶ 72} "(1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code or of a substantially equivalent municipal ordinance;"

{¶ 73} Upon review, we find the charges of failure to comply and aggravated vehicular assault are not allied offenses of similar import. Accordingly, the trial court did not err in sentencing Appellant to consecutive sentences on those charges.

{¶ 74} Based upon the above, we find Counts 3 and 5 to be allied offenses of similar import. Therefore, the trial court erred in sentencing Appellant on both charges.

{¶ 75} Appellant's fourth assignment of error is sustained, and the sixth assignment of error is overruled.

*State v. Duncan*, 2009 WL 3440025 at * 6-8.

Duncan argues that his sentence on Counts One, Three and Five of the indictment violated his double jeopardy rights.[18] The Double Jeopardy Clause of the Fifth Amendment, made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. CONST. AMEND.

---

[18] To the extent Grounds Four and Six allege claims of sentencing error under Ohio law, such claims are not cognizable in habeas, as a federal habeas court has jurisdiction to review a state petitioner's habeas petition only on the ground that the challenged confinement violates the Constitution, laws, or treaties of the United States. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). Duncan does, however, explicitly argue in his Traverse that the trial court violated his double jeopardy rights in failing to merge or vacate his sentences with respect to Counts One, Three and Five. (Doc. No. 22 at 16.) He also raised this argument on direct appeal to the state appellate court, at least with respect to Ground Six. (Doc. No. 12-25 at 26). Therefore, to the extent Grounds Four and Six raise claims under the Fifth Amendment's Double Jeopardy Clause, Duncan has raised claims that are cognizable on federal habeas review. *See e.g. Render v. Warden, Southern Ohio Correctional Facility*, 889 F.Supp.2d 1014, 1043 (S.D. Ohio 2012); *Spence v. Sheets*, 675 F.Supp. 2d 792, 824 (S.D. Ohio 2009).

-51-

V.  "'The Double Jeopardy Clause 'protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense.'" *Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013) (quoting *Brown v. Ohio*, 432 U.S. 161, 165 (1977)) (internal quotations omitted). *See also Walters v. Warden, Ross Correctional Inst*., 2013 WL 1296249 at * 1 (6th Cir. April 2, 2013); *Palmer v. Haviland*, 2008 WL 961640 at * 4 (6th Cir. April 9, 2008).

Duncan's claims implicate the third of these categories.  "Unlike the first two categories, the multiple-punishments category of double jeopardy is primarily one of legislative intent." *Palmer,* 2008 WL 961640 at * 4.  As the Supreme Court has explained, "[w]ith respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended." *Missouri v. Hunter*, 459 U.S. 359, 366 (1983).  When two different statutory provisions authorize punishment for the same act, "'[t]he first step is to determine whether [the legislature] intended to punish cumulatively the same conduct which violates two statutes.'"  *Volpe*, 708 F.3d at 696 (quoting *United States v. Johnson*, 22 F.3d 106, 107-108 (6th Cir. 1994)).

In *Blockburger v. United States*, 284 U.S. 299 (1932), the Supreme Court developed the "same elements" test to determine whether Congress has authorized cumulative punishments: "The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not."  *Id*. at 304. However, the Supreme Court has cautioned that "the *Blockburger* test does not necessarily control the inquiry into the intent of a state legislature. Even if the crimes are the same under

-52-

*Blockburger*, if it is evident that a state legislature intended to authorize cumulative punishments, a court's inquiry is at an end."  *Ohio v. Johnson*, 467 U.S. 493, 499 n. 8 (1984).

Thus, the scope of a federal court's habeas review is limited when conducting this type of double jeopardy analysis.  The Sixth Circuit has explained that, "[i]n contrast to most habeas claims, which are based entirely on federal constitutional rights, a claim under the Double Jeopardy Clause requires analysis of state law; because the state legislature has the authority to define and punish crimes, the definition of multiple punishments is dependent on the legislative intent of the state government."  *Person v. Sheets*, 2013 WL 2397407 at * 4 (6th Cir. June 2013).  *See also Volpe*, 708 F.3d at 697; *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) ("For the purpose of double jeopardy analysis, once a state court has determined that the state legislature intended cumulative punishments, a federal habeas court must defer to that determination.")  In other words, "[a]s long as the state court has concluded that the legislature intended cumulative punishment, this court is bound by that conclusion."  *Palmer,* 2008 WL 961640 at * 6; *see also Johnson*, 467 U.S. at 499 (1984) ("We accept, as we must, the Ohio Supreme Court's determination that the Ohio Legislature did not intend cumulative punishment for the two pairs of crimes involved here.")  Accordingly, if a state court finds legislative intent for cumulative punishment, the Court "cannot independently apply typical rules of statutory construction, including the *Blockburger* test, to a state statute and conclude that the state courts were wrong in their reading of legislative intent."  *Palmer*, 2008 WL 961640 at * 6.  *See also Volpe*, 708 F.3d at 696-697.

To determine whether the Ohio legislature intended to authorize cumulative punishments, Ohio courts apply the state's multi-count statute, Ohio Rev. Code § 2941.25.  *See State v.*

*Williams*, 134 Ohio St.3d 482, 484 (2012) (noting that R.C. 2941.25 "codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution"). That statute provides that:

> (A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

> (B) Where the defendant's conduct constitutes two or more offenses of dissimilar import ... the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

Ohio Rev. Code § 2941.25. At the time of Duncan's direct appeal, the Ohio Supreme Court interpreted § 2941.25 to require state courts to compare the elements of offenses in the abstract to determine whether the offenses were of similar import. *State v. Rance*, 85 Ohio St.3d 632, 638, 710 N.E.2d 699 (Ohio 1999). Specifically, *Rance* provided that "[c]ourts should assess, by aligning the elements of each crime in the abstract, whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other." *Id.* (internal quotations omitted). In addition, the Ohio Supreme Court had clarified that "nowhere does *Rance* mandate that the elements of compared offenses must exactly align for the offenses to be allied offenses of similar import ...." *State v. Cabrales*, 118 Ohio St.3d 54, 59, 886 N.E.2d 181 (Ohio 2008). [19]

---

[19] The Court notes that the Ohio Supreme Court later overruled the so-called "*Rance* test" in *State v. Johnson*, 128 Ohio St.3d 153 (Dec. 29, 2010). While *Rance* instructed state courts to compare the elements of offenses in the abstract to determine whether the offenses were allied offenses of similar import, *Johnson* abandoned the abstract analysis entirely, finding it unworkable. Instead, *Johnson* held that "[w]hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered." *Johnson,* 128 Ohio St.3d at syllabus. The Sixth Circuit has held, however, that federal habeas courts should not apply *Johnson*

### a.  Ground Four

In his Fourth Ground for Relief, Duncan insists the state appellate court misconstrued his argument on direct appeal.  He maintains his appellate brief argued that Count Three (OVI) was a lesser included offense of Count Five (aggravated vehicular assault), not an allied offense of similar import as stated by the state appellate court.  Relying on *State v. Zima*, 102 Ohio St.3d 61 (2004), Duncan maintains that, because he was convicted and sentenced on the lesser included offense of driving under the influence in Count Three, the trial court was precluded from convicting and sentencing him on aggravated vehicular assault as set forth in Count Five.  (Doc. No. 22 at 15.)  He also argues that because Count Three comes first "in the order, render and flow of the indictment," his sentence on Count Five violated his right against double jeopardy.  (Doc. No. 22 at 16.)  Accordingly, he argues his conviction under Count Five should be vacated.

The Court rejects this argument.  Whether or not OVI as set forth in Count Three of the indictment is considered a lesser included offense of aggravated vehicular assault as set forth in Count Five, or the two are considered allied offenses of similar import, the fact remains that the state appellate court agreed with Duncan that sentences should not be imposed with respect to both counts.  *Duncan*, 2009 WL 3440025 at * 8.  On remand, the trial court merged Count Three into Count Five for sentencing purposes.  (Doc. No. 12-52 at 2.)   Thus, Duncan was not subjected to multiple punishments for the same offense in violation of the double jeopardy clause.

_____

retroactively to cases where the defendant had already exhausted his appellate remedies. *See Volpe*, 708 F.3d at 701; *Walters*, 2013 WL 1296249 at * 3.  Because Duncan had exhausted his remedies on direct review at the time *Johnson* was decided, this Court will not consider it in conducting its habeas review.  Rather, the Court will review this claim in the context of the test in place at the time of the state appellate court's direct appeal decision; i.e. the *Rance* test as clarified in *Cabrales*.

-55-

In this respect, Duncan's reliance on *State v. Zima*, 102 Ohio St.3d 61 (2004) is misplaced.  In *Zima*, the Ohio Supreme Court held the State could not prosecute the defendant for aggravated vehicular assault under Ohio Rev. Code 2903.08(A)(1) when she had previously entered a no-contest plea in municipal court to driving under the influence for conduct arising out of the same incident.  The court explained this was because "driving under the influence is necessarily a lesser included offense of aggravated vehicular assault under R.C. 2903.08(A)(1), which proscribes causing serious physical harm to another as a proximate result of driving under the influence."  *Id*. at 68.  Unlike the defendant in *Zima*, however, Duncan was not successively prosecuted for aggravated vehicular assault.  Although Count Five comes after Count Three in the indictment and jury verdict form, Duncan was tried and convicted on both counts as part of the same criminal proceeding.  Moreover, as noted above, the trial court re-sentenced Duncan after remand so as to merge the sentence on Count Three into the sentence for Count Five, thereby ensuring he was not subjected to multiple punishments for the same conduct.  In light of the above, the Court finds Duncan has not demonstrated that the state appellate court decision on this issue is unreasonable or contrary to clearly established federal law.  Accordingly, he is not entitled to habeas relief with respect to Ground Four of the Petition.

### b. Ground Six

With respect to Ground Six, Duncan appears to argue that the imposition of consecutive sentences with respect to Counts One (failure to comply with the order or signal of a police officer) and Five (aggravated vehicular assault) violates principles of double jeopardy.  He maintains "under Federal Case law the applicable intent is clear" that "[c]onsecutive sentences are

-56-

not intended for being a substantial risk, and proximate cause of serious physical harm, when both consecutive sentences are on the same person." (Doc. No. 22 at 18.)

On direct appeal, the state appellate court recounted the elements of both Count One as set forth in Ohio Rev. Code 2921.331(B)(5)(a)(i) and Count Five as set forth in Ohio Rev. Code 2903.08(A)(1)(a).  Specifically, it noted that the offense of  failure to comply with the order of a police officer is prohibited in R.C. 2921.331(B)(5)(a)(ii) as follows: "[n]o person shall operate a motor vehicle so as to willfully elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop," and that "a violation of [this provision] is a felony of the third degree if the jury or judge as trier or fact finds [that] . . . . [t]he operation of the motor vehicle was a proximate cause of serious physical harm to persons or property."  It further explained that the offense of aggravated vehicular assault is prohibited in R.C. 2903.08(A)(1)(a) as follows: "[n]o person, while operating or participating in the operation of a motor vehicle . . . shall cause serious physical harm to another person . . . in any of the following ways: (1)(a) As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code [driving under the influence ("DUI")] or of a substantially equivalent municipal ordinance."  The state appellate court then determined, in the context of the *Rance* test, that these offenses were not allied offenses of similar import under Ohio Rev. Code 2941.25.  *See Duncan*, 2009 WL 3440025 at * 8.

The Court finds it was not unreasonable or contrary to clearly established federal law for the state appellate court to reach this conclusion.  While both Counts included the elements of serious physical harm and the trial court instructed the jury that these particular Counts related specifically to Kathy Ward, the offenses each contain elements that the other does not.

-57-

Specifically, the offense of failure to comply requires that the offender operate a motor vehicle to willfully elude or flee a police officer after receiving a signal to bring the vehicle to a stop, an element which is not present for commission of the offense of aggravated vehicular assault. Further, to demonstrate the offense of aggravated vehicular assault, the State must show that, while operating a motor vehicle, the offender caused serious physical harm as a proximate result of violating R.C. 4511.19 (DUI), which is not an element of the offense of failure to comply with the order of a police officer.  In light of these differences, the Court finds the state appellate court did not violate clearly established federal law in determining that Duncan was not subjected to cumulative punishments for the same act when the trial court imposed consecutive sentences for these offenses.  Thus, the Court finds Duncan's Sixth Ground for Relief is without merit.

    **D.**   <u>**Ground Five**</u>**: Allegedly Improper Consideration of Separate Counts within the Indictment when Imposing Sentences**

In Ground Five, Duncan argues he was denied due process when the trial court enhanced his sentences on Counts Five (aggravated vehicular assault) and Six (vehicular assault) based on the jury's determination in a separate "Count Seven" finding him guilty of operating a vehicle with a suspended license.  The Warden argues the guilty verdicts for Counts Five and Six "were fully in compliance with the penalty enhancement findings and R.C. 2945.75(A)."  (Doc. No. 12 at 45.)

Duncan raised this issue on direct appeal.  *Duncan*, 2009 WL 3440025 at * 2.  The state appellate court rejected it as follows:

In the fifth assignment of error Appellant asserts the trial court erred in accepting the jury's verdict as to Count 7.

{¶ 77} Revised Code Section 2945.75(A) states:

-58-

{¶ 78} "(A) When the presence of one or more additional elements makes an offense one of more serious degree:

{¶ 79} "(1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall allege such additional element or elements. Otherwise, such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.

{¶ 80} "(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

{¶ 81} Appellant maintains Count 7 of the verdict form finds the State proved Appellant operated a motor vehicle with a suspended license. Appellant argues he was not indicted on that charge; therefore, the trial court erred in accepting the verdict.

{¶ 82} Count 7 of the jury verdict form reads, "If we find the defendant Roy Duncan guilty of either one or both of the charges of aggravated vehicular assault, then we further find that* * *the prosecutor did prove that Mr. Duncan operated the motor vehicle on May 19, 2006 with a suspended driver's license."

{¶ 83} Pursuant to R.C. 2945.75(A) the additional finding is necessary to convict Appellant of aggravated vehicular assault in Count 5 of the indictment as a felony of the second degree, and vehicular assault in Count 6 as a felony of the third degree. Accordingly, Appellant was not convicted of an offense for which he was not indicted.

{¶ 84} Appellant's fifth assignment of error is overruled.

*Duncan*, 2009 WL 3440025 at * 8-9.

As an initial matter, to the extent Ground Five alleges a violation of state law, it is not cognizable on federal habeas review. *See Estelle*, 502 U.S. at 67-68 (explaining that "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions"). Thus, the Court will not reach Duncan's arguments insofar as they allege the trial court violated Ohio Rev. Code 2945.75(A).

However, Duncan also appears to argue the state appellate court's decision violated his

federal constitutional rights.[20]  Citing *Dunn v. United States*, 284 U.S. 390 (1932), he maintains that each count of the indictment "charges a complete offense[;] separate counts are not interdependent;" and, "when determining the effect of a verdict that responds by designation to a given count" federal law requires that "other counts of the indictment [should] be ignored."  *Id*. Accordingly, Duncan appears to maintain the trial court violated his due process and/or double jeopardy rights by utilizing the driving under suspension verdict as set forth in "Count Seven" of the verdict form, to enhance his sentences on both Counts Five and Six.  Duncan argues he was prejudiced by this error because, had the driving under suspension verdict on "Count Seven" not been inappropriately considered in conjunction with Counts Five and Six, he would have only have been sentenced to 5 years on Count Five (instead of 8 years) and 1½ years on Count Six (instead of 5 years).  *Id.*

The Court finds the state appellate court's resolution of this claim was not unreasonable or contrary to clearly established federal law.  Duncan's argument is premised on the assumption that the verdict form contained an additional count, "Count Seven," that was not present in the indictment.  This assumption is flawed.  While the indictment does not contain a "Count Seven,"

---

[20]  Although the state appellate court did not expressly address Duncan's argument that the enhancement of his sentences on Counts Five and Six based on the single driving under suspension verdict violated his federal constitutional rights, this Court must nevertheless accord AEDPA deference to the state court's decision.  In *Johnson v. Williams*, 133 S.Ct. 1088, 1096 (Feb. 20, 2013), the Supreme Court recently explained that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits" and, therefore, apply AEDPA deference under § 2254(d).  While this presumption is rebuttable "in some limited circumstances," *Johnson*, 133 S.Ct. at 1096, the Court does not find such circumstances present here. Indeed, Duncan does not argue that this Court should conduct a *de novo* review of this claim. Moreover, even if the Court were to consider this claim *de novo*, it would lack merit for the reasons set forth above.

it specifically charges in Counts Five and Six that Duncan was driving under suspension, thereby elevating the charges in those Counts to felonies of the second and third degrees, respectively. (Doc. No. 12-2 at 2-3.)  Thus, although the verdict form separates out the driving under suspension finding under the heading "VII," it does not convict Duncan of a charge that is not contained in the indictment.  Accordingly, the state appellate court's conclusion that Duncan was not convicted on an unindicted offense is not contrary to or an unreasonable determination of either the facts or clearly established federal law.

The Court also rejects Duncan's argument that increasing the sentences on both Counts Five and Six based on a single act of driving under suspension constitutes "double counting" in violation of federal law.  Citing *U.S. v. Farrow*, 198 F.3d 179, 188 (6th Cir. 1999), Duncan argues that because "[t]here was but one supposed act of driving under suspension," the trial court erred in using that "one act" to impose enhanced, consecutive sentences for both the aggravated vehicular assault and vehicular assault convictions. (Doc. No. 22 at 17.)  Duncan's reliance on *Farrow* is misplaced.  *Farrow* is a federal criminal case that considered the district court's application of a sentencing enhancement provision of the United States Sentencing Guidelines. As such, it has no bearing on this Court's habeas review of the state trial court's sentencing entry. Duncan cites no relevant law to support his position that the trial court's use of a single act of driving under suspension to increase his sentences on convictions relating to two separate offenses, violates his federal constitutional rights.  Accordingly, the Court finds Duncan is not entitled to habeas relief with respect to Ground Five.

### E.    <u>Ground Seven</u>: Failure of Verdict Form to State Essential Elements of Offenses

In Ground Seven, Duncan argues his due process rights were violated when the trial court

-61-

accepted the guilty verdicts on Counts One through Six despite the fact the verdict form failed to contain all of the essential elements of each offense.  The Warden acknowledges the verdict forms did not contain a statutory definition of each offense, but argues (summarily) that the state appellate court's rejection of this claim on direct appeal was not contrary to clearly established Supreme Court precedent.

On direct appeal, the state appellate court rejected this claim as follows:

{¶ 85} Appellant's seventh assignment of error asserts the trial court erred in accepting the jury's verdict as to Counts 1 through 6 when the verdict forms did not contain all of the essential elements of each offense.

{¶ 86} Ohio Criminal Rule 31(A) regarding jury verdicts does not require the verdict form to contain all the elements of the offense. Appellant has not established a deviation from a legal rule, and we have found nothing which requires or suggests that an affirmative defense be set forth on the verdict form. *See, State v. Hobbs*, 2008-Ohio-4658. Accordingly, we find the trial court's omission of the elements in the verdict form was not error.

{¶ 87} Appellant's seventh assignment of error is overruled.

*Duncan*, 2009 WL 3440025 at * 9.

Citing *Apprendi v. New Jersey*, 530 U.S. 466 (2000), Duncan argues the verdict form violated his federal constitutional rights because "the jury is either not finding the right essential elements of the offense charged or the jury is not finding enough of the essential elements in the verdicts to distinguish which degree of the offense should be considered." (Doc. No. 22 at 18.)  In particular, he maintains the verdict form fails to specify (1) that he "willfully fled" from a police officer with respect to Count One; or, (2) the aggravating elements necessary to justify imposing an enhanced sentence as to Counts Five and Six.  *Id.*

Generally, the Sixth Amendment and the Due Process Clause entitle "a criminal defendant

-62-

to 'a jury determination that [he] is guilty of every element of the crime with which he is charged, beyond a reasonable doubt.'" *Apprendi*, 530 U.S. at 477 (quoting *United States v. Gaudin*, 515 U.S. 506, 510 (1995)).  *See also In re Winship*, 397 U.S. at 364 ("[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged").

With respect to Count One, the verdict form states that "[w]e the jury find the defendant Roy Duncan:  √ guilty . . . of the crime of failure to comply with the order or signal of a police officer.  If we find the defendant Roy Duncan guilty of failure to comply with the order or signal of a police officer, then we further find that: √ The prosecutor did prove that Mr. Duncan's operation of the motor vehicle caused a substantial risk of serious physical harm to the person of Kathy Ward or to property."  (Doc. No. 12-55 at Exhibit pages 4-6.)  With respect to Counts Five and Six, the verdict form states simply that the jury finds Duncan guilty of aggravated vehicular assault against Kathy Ward and Officer Richard Miller, respectively.  It then states that "[i]f we find the defendant Roy Duncan guilty of either one or both of the charges of aggravated vehicular assault, then we further find that: √ The prosecutor did prove that Mr. Duncan operated the motor vehicle on May 19, 2006 with a suspended driver's license."  *Id*.  The form is dated August 31, 2007 and signed by each of the twelve jurors.  *Id.*

Upon review, the Court finds the state appellate court's resolution of this claim was not contrary to or an unreasonable determination of either the facts or clearly established federal law.[21]

_____

[21] The state appellate court did not expressly address Duncan's federal constitutional arguments with respect to this claim.  However, as discussed *supra*, this Court must nevertheless accord AEDPA deference to the state court's decision.  *Johnson,* 133 S.Ct. at 1096 (explaining that "[w]hen a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal

Although the verdict form does not delineate each element of the offenses charged in Counts One through Six of the indictment, the trial court clearly instructed the jury as to the elements of these offenses.  In particular, the transcript reflects the trial court specifically instructed the jury that, in order to find Duncan guilty of Count One, it must find that he "willfully eluded" a police officer after receiving a signal to bring his vehicle to a stop.  (Doc. No. 17-3 at 52-53.)  The trial court further emphasized that "one element of this crime is that the defendant willfully eluded or fled a police officer," and proceeded to define the term "willfully" for the jury.  (Doc. No. 17-3 at 53.)  Similarly, with respect to Counts Five and Six, the trial court instructed the jury as to each of the elements of these offenses, including the element of driving under a suspended license which increased the degree offenses (and therefore the sentences) for each of these Counts.  (Doc. No. 17-3 at 58-61.)  Indeed, Duncan does not argue the jury instructions failed to correctly instruct the jury regarding the essential elements of any of the offenses charged.

In sum, the trial court instructed the jury as to each of the essential elements of Counts One through Six, and the jury is presumed to have followed the trial court's instructions.  *See Cyars v. Hofbauer*, 383 F.3d 485, 493 (6th Cir. 2004); *Mattox v. Davis*, 549 F.Supp.2d 877, 920 (W.D. Mich. 2008).  Thus, the Court finds no merit to Duncan's argument that the failure of the verdict form to specify the essential elements of Counts One through Six casts doubt on whether the jury found him "guilty of every element of the crime[s] with which he is charged, beyond a reasonable doubt.'" *Apprendi*, 530 U.S. at 477.   The state appellate court's resolution of this claim was neither contrary to or an unreasonable determination of either the facts or clearly established

_____

claim was adjudicated on the merits" and, therefore, apply AEDPA deference under § 2254(d)).

federal law.  Accordingly, the Court finds Duncan is not entitled to habeas relief with respect to Ground Seven.

### F.  Grounds Eight and Thirteen: Alleged Failure of State Court to Issue a Final Appealable Order

In the Petition, Duncan argues the trial court erred when it failed to specify the exact amount of restitution in either the first or second amended sentencing entries.  (Doc. No. 1-1 at 8.) *See also* Doc. Nos. 12-4, 12-5, 12-21.  The Warden argues any error in this regard is harmless in light of the fact that, in response to Duncan's March 2011 Motion for Resentencing, the trial court expressly found "the state has offered no evidence at sentencing or since sentencing that the victims seek payment of . . . restitution" and, therefore, "[t]he defendant has no monetary restitution to pay in this case." (Doc. No. 12-69 at 2.)

In the Traverse, Duncan states that "[w]hen specifically raising the eighth ground for relief in the Habeas Petition, [he] mistakenly confused the ground for relief he was intending to be raised, for the Resentencing issue, he was persuing [sic] in the State level." (Doc. No. 22 at 19.) Thus, he argues Ground Eight in the Petition is a "mistake" and that "Ground Eight and Ground Thirteen are now the same argument." (Doc. No. 22 at 19.)  He then proceeds to argue the merits of Ground Thirteen as set forth in his Motion to Reopen filed in this Court on September 17, 2012. (Doc. No. 7.)

In Ground Thirteen, Duncan argues his due process rights have been violated because "the trial court has not issued a final judgment of conviction in which he can properly appeal." (Doc. No. 7 at 3.)  Specifically, he maintains the December 8, 2009 Third Amended Sentencing Entry is not a final appealable order because (1) it does not specify an exact amount of restitution as

required by Ohio Rev. Code 2929.18(A)(1); and, (2) the felony OVI specifications attached

Counts Three and Four of the indictment "are not being finalized in any way."  (Doc. No. 22 at

23.)  Because the Third Amended Sentencing Entry is not a final appealable order, Duncan argues

he is prohibited under state law from exercising his direct appeal rights and that this deprivation

violates both his federal due process and equal protections rights.

The facts relating to this Ground for Relief are as follows.  After the trial court issued the

December 8, 2009 Third Amended Sentencing Entry, Duncan filed a *pro se* notice of appeal

raising seven assignments of error. (Doc. Nos. 12-54, 12-56.)  While this appeal was pending, he

filed a *pro se* motion in the state trial court for "a final order and/or revised sentencing/judgment

entry."  (Doc. No. 12-62.)  The trial court denied the motion on July 28, 2010, on the grounds that

it lacked jurisdiction in light of Duncan's pending appeal. (Doc. No. 12-65.)  Subsequently, on

February 23, 2011, Duncan filed a motion to voluntarily dismiss his pending appeal based on his

belief that he "does not have a Judgment of Conviction that constitutes a final appealable order

pursuant to Ohio Revised Code 2505.02." (Doc. No. 12-58.)  The state appellate court granted this

motion on March 4, 2011.  (Doc. No. 12-59.)

Shortly thereafter, on March 10, 2011, Duncan filed a *pro se* "Motion for Resentencing" in

the trial court, claiming the December 8, 2009 sentencing entry did not constitute a "final and

appealable order" because it failed to specify the exact amount of restitution or contain a

disposition of the OVI specifications to Counts Three and Four of the indictment.  (Doc. No. 12-66

at 1-3.)  The trial court denied the motion on October 13, 2011, but found that "the state has

offered no evidence at sentencing or since sentencing that the victims seek payment of any . . .

restitution" and, therefore, Duncan "has no monetary restitution to pay in this case." (Doc. No. 12-

69 at 2.)

Believing this order was not itself a final appealable order, Duncan did not file a direct appeal from the trial court's October 13, 2011 judgment entry.  Rather, he filed a Petition for Writ of Mandamus in the state appellate court on November 3, 2011, seeking to require the trial court to resentence him based on the restitution and OVI specification issues discussed above.  (Doc. No. 18-6.)  The State filed a Motion to Dismiss, which was granted on April 23, 2012. (Doc. No. 18-9.)  In its Opinion granting the motion to dismiss, the state appellate court explained as follows:

> {¶3} For a writ of mandamus to issue, the relator must have a clear legal right to the relief prayed for, the respondent must be under a clear legal duty to perform the requested act, and relator must have no plain and adequate remedy in the ordinary course of law.  *State, ex rel. Berger, v. McMonagle* (1983), 6 Ohio St.3d 28, 6 OBR 50, 451 N.E.2d 225.
>
> {¶4} In the underlying case, the State suggests the OVI specifications were dismissed by the trial court prior to trial; Relator in turn argues the dismissal was not reduced to a judgment entry. It is undisputed that the jury did not receive the issue of the specifications to consider.  It is also undisputed that Relator was not convicted of the specifications.
>
> {¶5} The Supreme Court has explained, "[O]ur holding in *State v. Baker*, 119 Ohio St.3d 197, 2008-Ohio-3330, 893 N.E.2d 163, syllabus, 'requires a full resolution of those counts for which there were convictions.  It does not require a reiteration of those counts and specifications for which there were not convictions, but were resolved in other ways, such as dismissals, nolled counts, or not guilty findings.' (Emphasis added.)" *State ex rel. Davis v. Cuyahoga Cty. Court of Common Pleas*, 127 Ohio St.3d 29, 30, 936 N.E.2d 41 (Ohio, 2010).
>
> {¶6} Because the sentencing order already appealed by Relator contains all of the required elements pursuant to Crim. R. 32 and provides a full resolution of all counts for which there were convictions, we find the order was a final, appealable order.  For this reason, Relator has already obtained the relief he seeks; i.e. a final, appealable order, making the request for writ of mandamus moot.

*State of Ohio, ex rel. Roy Shane Duncan v. Judge James DeWeese*, Ohio Fifth District Court of Appeals Case No. 11 CA 102 (Opinion dated April 23, 2012).  *See* Doc. No. 18-9 at 2-3.  The state

appellate court also rejected Duncan's restitution argument, finding that "the trial court's order eliminating restitution makes [Duncan's] argument moot."  *Id*.  Accordingly, the court held that "[f]or this reason, the order being appealed was a final, appealable order relative to all other portions of [Duncan's] sentence." *Id*.

Duncan appealed to the Ohio Supreme Court.  On August 22, 2012, that court affirmed the state appellate court as follows:

> {¶ 1} We affirm the judgment of the court of appeals dismissing the petition of appellant, Roy Duncan, for a writ of mandamus to compel appellee, Richland County Common Pleas Court Judge James DeWeese, to issue a new sentencing entry. Duncan asserts that his current sentencing entry is not a final, appealable order.
>
> {¶ 2} Contrary to Duncan's assertion, to be final and appealable, the sentencing entry did not need to contain a disposition concerning specifications that Duncan was charged with but was not convicted of.  *See State ex rel. Rose v. McGinty*, 128 Ohio St.3d 371, 2011-Ohio-761, 944 N.E.2d 672, ¶ 3; *State ex rel. Davis v. Cuyahoga Cty. Court of Common Pleas*, 127 Ohio St.3d 29, 2010-Ohio-4728, 936 N.E.2d 41, ¶ 2.
>
> {¶ 3} The December 8, 2009 sentencing entry for Duncan fully complies with Crim.R. 32(C) and R.C. 2505.02 because it states that he was convicted by a jury of specified crimes, it sets forth the sentence, it is signed by the judge, and it was entered upon the journal by the clerk of court. FN1 Rose at ¶ 2.
>
> FN1. The entry orders Duncan to "pay restitution for medical expenses to Kathy Ward, Richard Miller, or providers." In a subsequent entry denying Duncan's motion for resentencing, the court stated that Duncan owed no monetary restitution. The entries thus resolved any issue concerning restitution.
>
> {¶ 4} Therefore, Duncan is not entitled to the requested extraordinary relief in mandamus to compel Judge DeWeese to enter a new sentencing entry.
>
> Judgment affirmed.

*State ex rel. Duncan v. DeWeese*, 132 Ohio St.3d 525 (2012).  *See also* Doc. No. 18-15.  On May 11, 2012, Duncan filed a motion to reinstate the direct appeal he had previously dismissed.  (Doc.

No. 12-60.)  The state appellate court denied the motion on May 16, 2012. (Doc. No. 12-61.)

As has been stated previously, in conducting habeas review, "a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Estelle,* 502 U.S. at 68.  As such, the Supreme Court has explained that  "it is not the province of a federal habeas court to reexamine state-court decisions on state-law questions." *Id.* at 67-68.  *See also Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007); *Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2001).  Accordingly, "errors in application of state law . . . are usually not cognizable in federal habeas corpus." *Walker v. Engle*, 703 F.2d 959, 962 (6th Cir. 1983).  *See also Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003); *Bey,* 500 F.3d at 519; *Coleman*, 244 F.3d at 542.  However, when a ruling on an issue of state law "is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512.  *See also Coleman,* 244 F.3d at 542; *Burger v. Woods*, 2013 WL 613382 at * 2 (6th Cir. Feb. 20, 2013).  Generally, rulings on issues of state law  "cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996)).

In light of the above, the Court finds the issue of whether the Ohio courts erred under state law in sentencing Duncan or adjudicating his appeals is not cognizable on habeas review.  *See e.g. Albourque v. Bradshaw*, 2012 WL 7634701 at * 7 (N.D. Ohio July 30, 2012) (in analyzing petitioner's claim that the Ohio courts denied him due process by failing to issue a final appealable order, finding that "whether the Ohio courts erred under state law in sentencing Albourque or in adjudicating his appeals is a question beyond the subject matter jurisdiction of this court").  Thus,

-69-

Duncan may be entitled to habeas relief only if he can demonstrate that the error complained of "is so egregious that it results in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512.

The Court finds the state courts' resolution of this issue did not amount to a denial of fundamental fairness. The state courts expressly found that the December 8, 2009 Third Amended Sentencing Entry constitutes a final, appealable order under state law. Thus, Duncan has not, in fact, been deprived of his right to exercise his direct appeal rights in violation of either the due process or equal protection clauses of the United States Constitution.

Accordingly, the Court finds Duncan is not entitled to habeas relief with respect to Grounds Eight and Thirteen.

> **G.** **Grounds Eleven and Twelve**: State Appellate Court's Failure to Properly
> Construe his Arguments on Appeal and Allegedly Unreasonable Denial of
> Duncan's Motion to Certify a Conflict

In Ground Eleven, Duncan argues the state appellate court erred when it failed to address certain assignments of error in his appellate brief "the way the errors were constructed and intended to be argued." (Doc. No. 1-1 at 11.) Specifically, he maintains the state appellate court intentionally misconstrued his argument that Count Three constitutes a lesser included offense of Count Five, as raising a claim that these counts constitute allied offenses of similar import. Further, he argues the state appellate court only addressed his claim regarding "Count Seven" of the verdict form (i.e. the driving under suspension finding) as a state law claim when he had clearly raised it as a federal constitutional issue.

In Ground Twelve, Duncan maintains the state appellate court erred when denying his Motion to Certify a Conflict as being untimely "when the late submission was already excused by the granting of a motion to file instanter that presented the motion to certify conflicts[,] whereby

-70-

violating the long standing federal case law of a court not being able to reconsider its previous final judgment." (Doc. No. 1-1 at 12.)  The Warden argues that both of these grounds present purely state law issues and, further, that Duncan has not demonstrated that either ground rises to the level of a federal due process violation.

The Court agrees with the Warden.  Both Grounds Eleven and Twelve raise state law issues that are not cognizable on federal habeas review.  Moreover, Duncan has not demonstrated that the errors complained of are "so egregious that [they] result[ed] in a denial of fundamental fairness." *Bugh*, 329 F.3d at 512.  Accordingly, the Court finds Duncan is not entitled to habeas relief with respect to either Ground Eleven or Twelve.

**H.    Ground Nine: Admission of Other Bad Act Evidence**

In Ground Nine, Duncan argues he was denied due process when the trial court admitted evidence regarding his previous driving history despite the fact he had offered to stipulate that he was driving under a suspension at the time of the offenses.  (Doc. No. 1-1 at 9.)  The Warden argues the state appellate court's resolution of this claim was not contrary to or an unreasonable application of clearly established federal law.

As discussed *supra*, Duncan was charged in Counts Five and Six of the indictment with aggravated vehicular assault and vehicular assault, respectively.  Both of these Counts charged that Duncan was driving under a suspension at the time of the offenses.  (Doc. No. 12-2 at 2-3.) Accordingly, and pursuant to state statute, Count Five (aggravated vehicular assault) was charged as a  felony of the second degree, rather than a felony of the third degree.  *See* Ohio Rev. Code § 2903.08(B)(1)(a).  Likewise, Count Six (vehicular assault) was charged as a felony of the third degree, rather than a felony of the fourth  degree.  *See* Ohio Rev. Code § 2903.08(C)(2).

-71-

The record indicates Duncan agreed to stipulate that he was driving under a suspended license at the time of the incident.  The State argued that driving under suspension was an element of Counts Five and Six because it elevated the degree of those offenses.  Thus, the State maintained it could not rely on Duncan's stipulation but, rather, was affirmatively required to offer evidence to support the charge that he was, in fact, driving under suspension at the relevant time. (Doc. No. 15-4 at 26-27.)  Duncan objected strenuously, arguing admission of his driving record would be "highly prejudicial."  (Doc. No. 15-4 at 27.)

After taking the matter under advisement, the trial court concluded the State "is permitted to offer evidence of any element which is an actual element of the offense itself" and, therefore, "the prosecutor may prove the driving under suspension." (Doc. No. 16-2 at 53.)  However, the court cautioned "that doesn't mean that you can talk about every offense that led to a suspension. That means that you can give us a general overview that he is driving under suspension without talking about the detail of all of those convictions."  (Doc. No. 16-2 at 53.)  The State agreed to limit its questions to establishing the status of Duncan's license and promised not "to emphasize the fact that Mr. Duncan had numerous DUIs in his past in order to reach this point." (Doc. No. 16-2 at 60.)  Defense counsel again objected that introduction of this evidence would be "extremely prejudicial."  (Doc. No. 16-2 at 55.)

Thereafter, the State elicited testimony from Trooper Burkhart that Duncan's driver's license was suspended on the night in question.  (Doc. No. 16-2 at 63.)  It introduced Duncan's driving record from the Bureau of Motor Vehicles and, based on that document, Trooper Burkhart testified Duncan had twenty-four open license suspensions on the night of May 19, 2006.  (Doc. No. 16-2 at 66-67.)  Immediately, prior to this testimony, however, the trial court instructed the

jury as follows:

> THE COURT: Folks, before we go ahead with this testimony, I want to say something to you. One of the things that the prosecutor is required to prove in this case is that the defendant was driving under a suspended license.  If he was driving, the prosecutor must prove he was driving with a suspended license as one of the elements of one of the crimes they've charged.  That's why this evidence comes in.
>
> Don't take it for more than it's worth.  You can't decide that it proves his character, because he has a suspended license he was therefore more likely to have done this case, do you understand? It proves the element for which it's offered. It can't be used by you to think he has bad character, and therefore he operated in accordance with that character.  They still have to prove the crime in this case.  This is one element of one of the crimes.  Don't take the evidence for more than it's worth.

(Doc. No. 16-2 at 63-64.)

Duncan raised this issue on direct appeal, arguing the introduction of this evidence violated both state law and his federal constitutional rights.  (Doc. No. 12-25 at 34-35.)  The state appellate court rejected this claim as follows:

> {¶ 95} In the ninth assignment of error, Appellant maintains the trial court erred in admitting his driving record into evidence.
>
> {¶ 96} Initially, we note, the admission or exclusion of evidence lies in the trial court's sound discretion. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343. In order to find an abuse of that discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 450 N.E.2d 1140.
>
> {¶ 97} Upon review of the record, the State introduced Appellant's driving record in order to demonstrate Appellant's license was suspended at the time of the incident at issue. The factor elevated Count 5 of the indictment from a felony of the third degree to a felony of the second degree, and the offense in Count 6 from a felony of the fourth degree to a felony of the third degree. Driving under suspension was not merely a sentencing enhancement, but an element of the crime(s) required to be proven beyond a reasonable doubt.

-73-

{¶ 98} Further, the trial court properly instructed the jury the evidence was solely admitted for the purpose of establishing Appellant was driving under a suspended license, and to not consider the same as bad character evidence.

{¶ 99} Appellant's ninth assignment of error is overruled.

*State v. Duncan*, 2009 WL 3440025 at * 10.

As a general rule, an error of state law in the admissibility of evidence does not constitute an infringement of a right guaranteed under the United States Constitution, and is not cognizable in habeas corpus. *See Bugh,*329 F.3d at 512*; Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir.2000). However, the Sixth Circuit has explained that "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief." *Bugh*, 329 F.3d at 512. *See also Coleman v. Mitchell*, 244 F.3d 533, 542 (6th Cir. 2000); *Seymour*, 224 F.3d at 552. The Sixth Circuit has cautioned that "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly." *Bugh*, 329 F.3d at 512 (citations omitted). *See also Dowling v. United States*, 493 U.S. 342, 352-53 (1990); *Burger*, 2013 WL 613382 at * 2 ("A due process claim premised on a mistaken state court evidentiary ruling faces a steep climb."). "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental." *Seymour,* 224 F.3d at 552 (quoting *Egelhoff*, 518 U.S. at 43). Moreover, in order to obtain habeas relief in this context, a petitioner must establish "actual prejudice" from the admission of the allegedly improper evidence. *Clemmons v. Sowders*, 34 F.3d 352, 357-58 (6th Cir. 1994). *See also Brown v. O'Dea*, 227 F.3d 642, 645 (6th Cir. 2000) (petitioner must show that admission of improper evidence is "material in the sense of a crucial, critical highly significant factor"); *Brown*, 2013 WL 613382 at * 3

-74-

(same).[22]

In *Bugh*, the Sixth Circuit considered whether a petitioner's due process rights were

violated by the admission of evidence concerning similar, uncharged acts of child molestation by

petitioner. *Bugh,* 329 F.3d at 511. In that case, as in this one, the petitioner argued that the

admission of this evidence was so prejudicial that it "poisoned the trial and violated [his] right to

a fundamentally fair trial." *Id.* The Sixth Circuit found the petitioner was not entitled to habeas

relief with respect to this claim, as follows:

> In this case, the admission of prior bad acts evidence was not contrary to clearly
> established Supreme Court precedent. There is no clearly established Supreme
> Court precedent which holds that a state violates due process by permitting
> propensity evidence in the form of other bad acts evidence. In *Estelle v.
> McGuire*, the Supreme Court declined to hold that the admission of prior injury
> evidence violated due process, thus warranting habeas relief. 502 U.S. 62, 75,
> 112 S.Ct. 475, 116 L.Ed.2d 385 (1991). The Court stated in a footnote that,
> because it need not reach the issue, it expressed no opinion as to whether a state
> law would violate due process if it permitted the use of prior crimes evidence to
> show propensity to commit a charged crime. *Id.* at 75 n. 5, 112 S.Ct. 475.
> Moreover, in *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606
> (1967), the Supreme Court rejected the argument that the Due Process Clause
> requires the exclusion of prejudicial evidence, even though limiting instructions
> were given and a valid state purpose is served. *Id.* at 563-64, 87 S.Ct. 648. The
> Court recognized that it was not "a rule-making organ for the promulgation of
> state rules of criminal procedure. And none of the specific provisions *513 of the
> Constitution ordains this Court with such authority." *Id.* at 564, 87 S.Ct. 648.
> While the Supreme Court has addressed whether prior acts testimony is
> permissible under the Federal Rules of Evidence, *see Old Chief v. United States*,

---

[22] Here, the state appellate court did not directly address Duncan's argument that the
introduction of his driving record violated his federal constitutional rights. However, as
discussed *supra*, the Supreme Court has explained that "[w]hen a state court rejects a
federal claim without expressly addressing that claim, a federal habeas court must
presume that the federal claim was adjudicated on the merits" and, therefore, apply
AEDPA deference under § 2254(d). *Johnson,* 133 S.Ct. at 1096. While this presumption
is rebuttable "in some limited circumstances," *Johnson*, 133 S.Ct. at 1096, Duncan does
not argue such circumstances are present here. Moreover, even if the Court were to
consider this claim *de novo*, it would lack merit for the reasons set forth above.

-75-

519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997); *Huddleston v. United States*, 485 U.S. 681, 108 S.Ct. 1496, 99 L.Ed.2d 771 (1988), it has not explicitly addressed the issue in constitutional terms. Accordingly, the district court correctly found that there is no Supreme Court precedent that the trial court's decision could be deemed "contrary to," under AEDPA.

*Id.* at 512 -513.

The Court reaches a similar conclusion in the instant case.  Duncan has not directed this Court's attention to any Supreme Court case finding a federal due process violation as a result of the admission of prior bad act evidence during a state criminal trial.  Although Duncan argues the Supreme Court's decision in *Old Chief* demonstrates he is entitled to habeas relief, the Court finds Duncan's reliance on that case is misplaced.  In *Old Chief*, a federal criminal case, the Supreme Court held that the district court erroneously allowed the prosecution to use the full record of the defendant's prior conviction of assault resulting in serious bodily injury, in violation of 18 U.S.C. § 1154, to prove the element of a prior felony conviction necessary for his unlawful possession of a firearm charge under 18 U.S.C. § 922 (g)(1).  *Old Chief*, 519 U.S. at 174.  The Supreme Court found this was particularly problematic, given that the defendant had offered to stipulate to the fact of his prior felony conviction in order to avoid the danger of unfair prejudice resulting from the presentation of evidence regarding the name and nature of that prior conviction to the jury.  *Id*. at 175.  The instant case, however, is distinguishable from *Old Chief* because that case interpreted Federal Rule of Evidence 403 and did not address whether the admission of prior acts testimony gave rise to a federal constitutional violation.  *See Emerick v. Prelesnick*, 2012 WL 3194493 at * 5 (6th Cir. Aug. 8, 2012) (in habeas case, distinguishing *Old Chief* on the grounds that it "did not address whether the inclusion of prior acts testimony gave rise to a constitutional violation").

Moreover, the trial court in this case mitigated any potential prejudice to Duncan by

limiting the State to introducing evidence regarding the fact of suspension, and barred it from eliciting testimony regarding "the detail[s]" of any of Duncan's suspensions, particularly those relating to his prior DUIs.  Further, the trial court explicitly instructed the jury that: "You can't decide that [evidence of Duncan's prior driving history] proves his character, because he has a suspended license he was therefore more likely to have done this case, do you understand? It proves the element for which it's offered. It can't be used by you to think he has bad character, and therefore he operated in accordance with that character.  They still have to prove the crime in this case.  This is one element of one of the crimes.  Don't take the evidence for more than it's worth." (Doc. No. 16-2 at 63-64.)

In light of the above, the Court finds that the trial court's admission of Duncan's prior driving history was not prejudicial or offensive to "some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental," *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996) (quoting *Patterson v. New York*, 432 U.S. 197, 202 (1977)).  In fact, the trial court specifically limited the use of the evidence, after excluding the details of the underlying offenses, to the very issue that Duncan was apparently willing to admit (i.e. that he was driving under suspension) and nothing more.  Accordingly, the Court finds the state court's resolution of this claim was not contrary to clearly established federal law and, therefore, Duncan is not entitled to habeas relief with respect to Ground Nine.

## V.  Conclusion

For the foregoing reasons, it is recommended that Duncan's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: November 14, 2013

## OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**